Hill v. Hart, 23 N. M., 226

[No. 2025.  August 23, 1917.]

HILL v. HART, ET AL.

[Rehearing Denied October 3, 1917.]

SYLLABUS BY THE COURT.

1.  There is no conflict between the written·and printed portions of a promissory note where the written portion of the note provides for the payment of interest, and the printed portion provides, "with interest at the rate of nine per cent. per annum from maturity date," the word "date" being written, it being the intention of the parties that the amount specified should draw interest only from maturity date; hence there was no occasion to apply the rule that the written portion should prevail over the printed portion.     231

2.  The principle that parol evidence is not admissible to vary the terms of a written instrument is not infringed when the evidence is used for the purpose of ascertaining the meaning of doubtful expressions in the instrument.     232

3.  Where a promissory note is payable to a given person or order, and is transferred to another by such person, without indorsement, such note is subject to any defense which existed against the note in the hands of the original payee.
Page 234

Appeal from District Court, Bernalillo County; M. C. Mechem, Judge.

Suit for specific performance by Catherine Hill against Martha E. Hart and others.  Decree for plaintiff, and defendants appeal.  Affirmed.

George S. Klock, of Albuquerque, for appellants.

The note and contract constituted a complete transaction and parol evidence was inadmissible to vary terms thereof.

Locke v. Murdoch, 151 Pac. 298.

"Where a contract is partly printed and partly in writing, the written matter must prevail over the printed in case of conflict between them.

Hill v. Miller, 76 N. Y. 32; Clark v. Woodruff, 83 N. Y. 518; Harper v. Albany Mutual Insurance Co., 17 N. Y. 194; Thomas v. Laggart, 209 U. S. 385, 52 L. Ed. 845; Chadsey v. Guyon, 97 N. Y. 5333.

Where the contract provides for the payment of a certain rate of interest per annum, it only fixes the rate to be paid and has no reference to the time when such interest shall be paid, and consequently interest so reserved becomes due and payable only with the principal."

Cyclopedia of Law and Procedure, Vol. 22, pages 1482 and 1463.

Again "A stipulation for interest at a specified rate per annum does not import a contract to pay interest annually. The term employed only affording a measure for the computation of interest."

American and English Encyclopedia of Law, Second Edition, Vol. 16, page 1071; Ramsdell v. Mulett, 50 Kans. 440 (C. E.), 31 Pac. 1092; Motsinger v. Miller, 59 Kans. 575; Koehring v. Nueminghoff, 61 Mo. 406 (S. C.), 21 Am. Rep. 402; Leonard v. Phillips, 39 Mich. 182 (S. C.) 33, Am. Rep. 370; Cooper v. Wright, 23 N. J. Law, 200.

For definitions of corroborative evidence, see:
Gildersleeve v. Atkinson, 6 N. M. 250, 27 Pac. 477; Byerts v. Robinson, 9 N. M. 427, 54 Pac. 932; Radcliffe v. Chaves, 15 N. M. 258, 110 Pac. 699; Childers v. Hubbell, 15 N. M. 450, 110 Pac. 1051.

Neil B. Field, of Albuquerque, for appellee.

Where terms of contract are obscure or uncertain, evi-

dence of antecedent negotiations is admissible to enable court to put itself in place of parties and view it as they did.

1 Addison on Cont. Sec. 221; Nash v. Towne, 72 U. S. 689; Bartels v. Brain, 44 Pac. (Utah) 715; 4 Wigmore on Evid. Sec. 2465; Gill v. Ferrin, 71 N. H. 421; Lonergan v. Beauford, 148 U. S. 581; The Barnstable, 84 Fde. 895.

Contracts, where ambiguous, will be construed most strongly against the maker.

Texas and Pacific R. Co. v. Reiss, 183 U. S. 621, 626; Royal Ins. Co. v. Martin, 192 U. S. 149, 162; Christian v. First Nat'l. Bank, 155 Fed. 705, 709; Noonan v. Bradley, 9 Wall. 394.

Person taking negotiable paper without endorsement is not holder in due course.

Trust Co. v. National Bank, 101 U. S. 68; Osgood's Adm. v. Artt, 17 Fed. 575.

It is a canon for the interpretation of contracts that the practice of the parties under them may furnish a solid basis upon which their construction may rest.

Chicago Great Western R. Co. v. Northern Pacific R. Co., 101 Fed. 792.

## OPINION OF THE COURT.

ROBERTS, J. This was a suit for the performance of a contract for the purchase of certain real estate described in the complaint, entered into by appellant and one Henry, deceased, and to quiet title to the same real estate, appellants being the heirs at law of Henry. The facts, in brief, are that some time prior to the execution of the contract which forms the subject of this action Dr. Henry entered into a contract for the sale of certain real estate in Albuquerque with one Annie Anderson, who was the mother of the appellee, and Mrs. Anderson was placed in possession

of the premises under the contract. Mrs. Anderson paid $90 on account of the contract, and then found herself unable to go on with it, and the appellee applied to Dr. Henry to know if it could not be assigned over to her, as she would have to make the payments. It appears that a deed which had been executed by Dr. Henry to Mrs. Anderson, but was not delivered to her, was altered by erasing the name of Mrs. Anderson and inserting the name of Catherine Hill, as grantee, and that a promissory note was prepared by Henry and submitted to appellee for her signature. The material portion of the note is here inserted, that portion in writing being underscored:

$1900.          Albuquerque, New Mexico, March 12, 1917.

"——————— after date, for value received waiving grace and protest, I, we, or either of us, jointly and severally promise to pay to the order of J. A. Henry or order at the First National Bank of Albuquerque, Nineteen Hundred dollars to be paid as follows: $70 on 4-12-07 and $20 on 5-12-07 and $20 on the 12th of each and every succeeding months till the whole amount with interest is paid, Dollars with interest at the rate of nine per cent. per annum from Maturity date until paid."

On the same day and concurrent with the signing of said note, the following memorandum of agreement was signed by Henry and accepted by appellee, viz.:

Albuquerque, N. M., Mch. 12-07.

"I have this day made a deed to Miss Catherine Hill to frac. Lots No. 10, 11 and 12 in block No. 3 Hughes Hiland Addition to the City of Albuquerque. Said deed to be delivered to her or assigns on the payment in full with interest a certain note of nineteen hundred dollars ($1,900) of even date (March 12-07) signed by said Catherine Hill and made payable to J. A. Henry, or his assigns. To be paid as follows: $70 Apr. 12-07 and $20 May 12-07, and $20 on the 12th of each and every succeeding month till the full amount is paid.
"(Signed)                    J. A. HENRY.
"The above agreement is the agreement between J. A. Henry and myself.
"(Signed)                    MISS CATHERINE HILL."

These papers, together with the deed, were placed in an envelope and Henry signed a memorandum of escrow, in words as follows:

"Contract between J. A. Henry and Catherine Hill and deed to her for Frac. Lots 10, 11 and 12,. Blk. 3, Hunings Highland Add.  The said deed to be delivered to her when she pays in full a note for $1,900 with interest as specified in May 24, 1908.
 "(Signed)                                        J. A. HENRY."

It does not appear that Miss Hill was present when the escrow memorandum was signed, but that paper is dated May 24th.  The deed was acknowledged May 4, 1908. The appellee, with her mother and stepfather, continued in possession of the property until the death of her step-father in 1907, and the death of her mother pending this suit, and until the time of the trial.  Dr. Henry died in July, 1908, and appellee continued to pay the monthly installments without anything having been said to her about interest until July, 1914.  Dr. Henry's estate was settled and the administrator was discharged on June 4, 1912.  In July, 1914, Mrs. Hart, the administratrix, first demanded of appellee that she pay interest on the note.  Appellee, however, never recognized any liability for interest.  Appellant sought to show that Vita O. Henry, one of the heirs at law, became owner of this note in 1911 through some arrangement made between the heirs of Henry, and that she thought at the time she became owner of the note that it was an interest-bearing obligation.  The note was never indorsed to Vita O. Henry, and the trial court held that she took the note subject to all the defenses which might have been made against it in the hands of the original payee; that Vita O. Henry did not receive the note by indorsement, and that she was not a holder for value in due course, within the meaning of our statute or of the law merchant.  The trial court admitted parol evidence to be introduced relative to the facts and circumstances attending the execution of the contract and note and as to certain statements made by Dr. Henry at that time.  The court found that the note in question had been fully paid; that it was the intention of the parties that it should bear interest only from maturity; and decreed specific performance of the contract.

While appellant has assigned 51 grounds of error, we are of the opinion that three questions are decisive of the

case: First, under the terms of the note and contract, was interest payable from date or from maturity? Second, assuming that the contract was ambiguous as to the interest provision, did the court commit error in permitting parol evidence to be introduced as to the facts and circumstances attending the execution of the contract and the agreement which led up to its execution? Third, the note not being indorsed to Vita O. Henry, was it subject to any defense which existed against the original holder?

[1] As to the first proposition, it is appellant's contention that there is a conflict between the written and the printed portions of the note, and that under subdivision 4, § 23, of the Negotiable Instrument Law (section 611, Code 1915), the written provision must prevail. In this same section it is provided that, where an instrument provides for the payment of interest without specifying the date from which the interest is to run, the interest runs from date of the instrument, and, if the interest is undated, from the issue thereof. In this case, however, the note, after providing for the payment of interest, specifies when the interest is to begin, namely, from maturity date. A later clause in the note provides that if any payment becomes due and is not paid, then the whole amount becomes due. It is apparent, we think, from the face of the note, that there is no conflict between the written and printed portions, but that it was the intention of the parties that the amount specified should draw interest only from the "maturity date." There being no conflict, there was no occasion for a resort to the statute, nor does this construction result in creating a conflict between the contract and the note. The note and the contract being executed at the same time and as a part of the same contract, they must, of course, be construed together. In Elliott on Contracts, § 1522, it is said:

"Several instruments which refer to the same subject-matter between the same parties and made as parts of substantially one transaction are considered as one contract, and receive the same construction as if their several provisions were in one and the same instrument. This principle is of wide application and the illustrative cases are numerous. Thus,

where the making of a note is accompanied by an agreement in relation thereto, the note and the agreement are to be taken together, and form one entire transaction."

Reading the contract and the note together, there is no conflict between them. While the note provided for the payment of the debt in full, with interest, we look to the provisions of the note to see from what date the interest was to run, and there find it plainly expressed that it is to run from maturity date.

[2] If it be assumed that the language employed in the note and contract was ambiguous and uncertain, this uncertainty was cleared up by the introduction of parol evidence as to the facts and circumstances relative to the agreement between Dr. Henry and appellee. Appellee testified fully as to such facts and circumstances, and stated that Dr. Henry said to her that $1,900 was to be the full amount which she should pay for the house. This evidence, given by appellee, was corroborated by her brother, who was present at the time of the execution of the contract. Appellant argues that the court committed error in admitting this evidence and in holding that the testimony of appellee was sufficiently corroborated under our statute. It is well settled that, where the terms of a contract are obscure and uncertain, evidence of antecedent negotiations and of the facts and circumstances surrounding the parties is admissible to enable the court to put itself in the place of the parties to the contract and to view it as they viewed it. Appellee did not seek by parol evidence to show a contemporaneous oral agreement covering the subject-matter of the contract and inconsistent with the writing, but sought to show that the writing expressed the intention of the parties, and offered the antecedent negotiations only as shedding light upon the meaning of the words used by the parties to the transaction. The principle that parol evidence is not admissible to vary the terms of a written instrument is not infringed when the evidence is used for the purpose of ascertaining the meaning of doubtful expressions in the instrument.

"To enable us also to arrive at the real intention of the parties, and to make a correct application of the words and

language of the contract to the subject-matter thereof, and the objects professed to be described, all the surrounding facts and circumstances may be taken into consideration. The law does not deny to the reader the same light and information that the writer' enjoyed; he may acquaint himself with the persons and circumstances which are the subject of the allusions and statements in the writing, and is entitled to place himself in the same situation as the party who made the contract to view the circumstances as he viewed them, and so judge of the meaning of the words and of the correct application of the language to the things described." 1 Addison on Con. § 221.

, "Courts, in the construction of contracts, look to the language employed, the subject-matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and, in that view, they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the lanugage to the things described." Nash v. Towne, 5 Wall. (72 U. S.) 689, 699, 18 L. Ed. 527.

"The evidence objected to was not admitted to add to, take from, or to change in any respect the language of the writing. There was no intention of admitting any other language of the contract than that contained in the written instrument. The object of the evidence was to place the facts in view of the parties when they made the lease before the court, when construing it. In order to determine whether a man has acted reasonably, we should know the facts and circumstances in view of which he acted. And, to determine the use that the parties deemed reasonable, the court should know the facts from which they reasoned. In view of the fact that the particular use to which the land was to be put by the lessee was not mentioned in the lease, it was proper to admit evidence tending to show that the parties intended the land should be used for brickmaking purposes; and it was not error to show the understanding of the parties by their declarations in the form of a verbal agreement, and that the lessor, after the lease was executed, saw the lessee excavating the land and making the brick of it, without objection." Bartels v. Brain, 13 Utah, 162, 44 Pac. 715.

Prof. Wigmore says:

"The antiquated notion that a document must be construed solely within its four corners, no matter how puzzling' the problem, served for a time to retard the full appreciation of sound doctrine. But it was well settled by the middle of the 1800's in England; the case of Macdonald v. Longbottom, in which 'your wool' was to be interpreted, served to mark the period of full conviction. In the United States the principle

has also received ample sanction and illustration." 4 Wigmore on Evidence, § 2465.

This court is in full accord with Mr. Wigmore. See Schwentker v. Hubbs, 21 N. M. 188, 153 Pac. 68; Ellis v. Stone, 21 N. M. 730, 158 Pac. 480, L. R. A. 1916F, 1228.

In this connection it is perhaps proper to refer to the objection raised by appellant to the effect that the evidence of the brother was not sufficiently corroborative of that given by appellee to warrant the judgment, under section 2175, Code 1915. The question as to the proper construction of this statute, and as to the quantum of corroboration necessary, was fully discussed by this court in the case of Union Land & Grazing Co. v. Arce, 21 N. M. 115, 152 Pac. 1143. The evidence offered, we believe, affords sufficient corroboration, and, as the statute and its proper construction was fully discussed in the case referred to, nothing would be gained by a further consideration of this question.

[3] What we have heretofore said under the first proposition discussed possibly renders a consideration of the third point stated unnecessary, but, as it is strenuously urged by appellant, we will discuss it. The note was not indorsed, notwithstanding which fact appellant contends that it was not subject to extraneous proof for the purpose of explaining the claimed apparent conflict between the written and the printed portions of the same. The note was payable to order. By section 55 of the N[e]gotaible Instrument Act (section 643, Code 1915) it is provided:

"Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferor. But for the purpose of determining whether the transferee is a holder in due coruse, the negotiation takes effect as of the time when the indorsemnt is actually made."

Under this section, the note being so transferred, without indorsement, the holder acquired only such title thereto as the transferor had in the note, and it was subject to any

defense which existed against the note in the hands of the original payee. This being true, the fact that Vita O. Henry accepted the note as an interest-bearing obligation "from date" becomes of no importance.

For the foregoing reasons the judgment of the district court will be affirmed, and it is so ordered.

HANNA, C. J., and PARKER, J., concur.

[Rehearing Denied October 3, 1917.]