RAVANY et al. v. EQUITABLE LIFE ASSUR. SOC.
OF UNITED STATES.

[No. 2369.  Jan. 7, 1921.]

SYLLABUS BY THE COURT.

1.   Mere inadequacy of consideration is not sufficient in and of itself, to avoid a contract, unless such inadequacy is so gross as to shock the conscience and furnish satisfactory and decisive evidence of fraud.        P. 520

2.   The appellate court will not consider a finding made by the trial court five days after the entry of judgment, and without notice to the opposite party.        P. 521

3.   A finding by the court, to the effect that there was nothing in the appearance, manner of testifying, or attitude

on the witness stand of certain witnesses to cause the court to disbelieve any of their testimony is not a finding of an ultimate fact, and cannot be used to impeach the judgment rendered by the court.                                    P. 521

4.   Mental weakness, whether resulting from sickness, age, or any other cause which does not totally destroy the ability to comprehend the nature and effect of the transaction, furnishes no ground for the avoidance of a contract entered into by such person, in the absence of evidence showing fraud or undue influence.                                   P. 522

5.   In a suit to annul and set aside an annuity contract on the ground of mental incapacity of the purchaser of the contract, where the court finds that such purchaser at the date he entered into the contract was possessed of mental power and ability sufficient to understand, and did understand, the nature and character of said contract, such finding does not conflict with a finding made by the court, to the effect that at such time said purchaser did not have the mental capacity to understand and know, even approximately, the expectancy of life of the annuitant, and that the policy was based upon the expectancy of life of the average sane person, because the facts last found were not essential elements of the contract, and were used only by the company as the basis for its determination as to the price it would charge for a given standard contract.                                       P. 523

Appeal from District Court, Bernalillo County; Reynolds, Judge.

Suit by Joseph Ravany, administrator of the estate of Joseph M. Ravany, deceased, and another, against the Equitable Life Assurance Society of the United States, to cancel an annuity contract. Decree for defendant and plaintiffs appeal. Affirmed.

See, also, 26 N. M. 41, 188 Pac. 1106.

H. B. JAMISON, of Albuquerque, and E. R. WRIGHT, of Santa Fe, for appellants.

E. W. DOBSON, of Albuquerque, for appellee.

OPINION OF THE COURT.

ROBERTS, C. J.   The appellants, Joseph Ravany, administrator of the estate of Joseph M. Ravany, deceased, and Elvina Ravany, by her guardian ad litem, H. B. Jamison, brought suit against appellee, the Equi-

516    SUPREME COURT OF NEW MEXICO

Ravany v. Equit. Life A. Soc., 26 N. M. 515.

table Life Assurance Company of the United States, to cancel a certain annuity contract entered into by one Joseph M. Ravany, now deceased, with the appellee in September, 1912, for an annuity payment to his insane daughter, Elvina Ravany.

The theory upon which the complaint proceeded was: (1) That Joseph M. Ravany was without the mental ability and power to understand the nature and character of the said pretended contract for the annuity into which he entered with the said company; and (2) that the agent of appellee made certain false and fraudulent representations to the said Joseph M. Ravany; and (3) that the consideration for the contract was grossly inadequate. The answer denied all the material allegations of the complaint. The court upon the trial of the case made certain findings of fact and stated conclusions of law, and entered a decree sustaining the contract.

A brief recital of the facts may assist in a better understanding of the question later discussed. The contract was made in December, 1912. At that time Joseph M. Ravany was 86 years of age. Appellee had an office in the city of Albuquerque, in charge of Patterson, a general agent. Ravany had a daughter 43½ years of age, who was demented, and had been so for many years. Ravany was apparently desirous of making provision for the future support and maintenance of his insane daughter, and entered into a contract with the First Savings Bank & Trust Company by which the bank was to pay to the daughter, or her guardian, a stipulated amount each month for a period of 20 years. Probably another similar contract was also made. Mr. Ravany sought out the agent of the appellee company about a month or so before the contract was made, and informed the agent as to the status and condition of his daughter, and stated that he desired to purchase an annuity contract of insurance for the benefit of said daughter, and wanted a contract that would assure the daughter a stipulated amount so long as she should live, and so that there would be no possibility of any one inter-

JANUARY TERM, 1921        517

Ravany v. Equit. Life A. Soc., 26 N. M. 515.

fering or taking the same from her. The result was that the application was made for the annuity contract in question, which was later entered into. Under the contract Mr. Ravany paid $7,000 in cash for the annuity policy, and the company in return agreed to pay semi-annually to the daughter so long as she lived the sum of $191.94. The agent of the company knew at the time that the daughter was insane. The insurance company in all cases under similar annuity contracts uses the expectation of life of the ordinary normal individual as the basis upon which it determines the annuity which a given amount of money will buy, and all such contracts are sold upon the basis of the age of the annuitant, regardless of every other consideration; that is to say, whether the annuitant is physically perfect or otherwise is not an element entering into the contract; the sole basis used in determining the amount of annuity that a given sum will buy being the age of the annuitant.

The father lived some 2 or 3 years after purchasing the contract, and received during that period the semi-annual payments for the daughter. At his death, the son, Joseph Ravany, administrator, appellant here, was appointed administrator of his father's estate, and later Mr. Jamison was appointed guardian ad litem for the insane daughter for the purpose of bringing this suit. These parties in their official capacities as aforesaid instituted this action to set aside the annuity contract and recover the money paid therefor from the company upon the theory, as stated, that the elder Ravany did not have the mental capacity to make the contract, and that he was induced to enter into same by fraud. There is evidence pro and con as to the question of the mental capacity of the elder Ravany, and a finding by the court either way would have been supported by substantial evidence.

The question here presented has to do with the legal effect of the findings of the court. Without attempting to follow the points made and argument presented in the

briefs on file, we will endeavor to dispose of all the questions raised.

The court found that the daughter was insane, which was not a disputed question in the case; that her age was 43½ years, and that the normal expectancy of life of an insane person was not more than one-half of the expectancy of life of the average sane person at the daughter's age; that the annuity policy issued by the company was based by said defendant company in its return of money upon the expectancy of life of the average sane person, and that the expectancy of such a person 43½ years of age would be 26 years. Five findings made by the court give rise to the questions raised on the appeal. Three findings for the appellants were as follows:

### Finding No. 9 reads:

"That said Joseph M. Ravany, deceased, did not have the mental capacity, at the time when said policy was issued or when said application was made, to understand and know, even approximately, the expectancy of life of his daughter, Elvina Ravany, and that the policy was based upon the expectancy of life of an average sane person aged 43½ years."

### Supplemental finding, not numbered, as follows:

"That there was nothing in the appearance, manner of testifying or attitude on the witness stand of either Dr. Reidy, Dr. Pearce, or Dr. Rice to cause the court to disbelieve any of their testimony."

### Supplemental finding No. 2:

"That the consideration given the company to Joseph M. Ravany, deceased for the payment of said $7,000 was grossly inadequate."

### Finding No. 1, made at the request of the appellee, was as follows:

"That the said Joseph M. Ravany, deceased, on the 25th day of September, 1912, the date he entered into said contract with the defendant to purchase, and did purchase said annuity policy, was possessed of mental power and ability sufficient to understand, and did understand, the nature and character of the said contract."

And an additional finding, requested by the appellee

and found five days after the signing of the judgment
and without notice to the appellants, which reads as
follows:

"That while the court found that the consideration given
by the defendant company was grossly inadequate, by such
finding the court meant that the inadequacy of consideration
was not so great or sufficient as to 'shock the conscience of the
court,' or to entitle the plaintiffs to the relief prayed for, based
upon said ground of inadequacy of consideration alone."

The court rendered judgment for appellee, refusing
to set aside the contract, and it is argued that the judg-
ment was not warranted by the findings, in that the
findings were so conflicting that no judgment for the
appellee could be entered thereon. Some preliminary
questions will be first considered in order to arrive at
what we consider to be the real merits of the case.

[1] The court in refusing to find that there was any
fraud or undue influence or overreaching practiced on
the elder Ravany, what was the effect of the finding by
the court that the consideration for the contract was
grossly inadequate? This question is settled by the case
of Fraser v. Bank, 18 N. M. 340, 137 Pac. 592, in which
we held that mere inadequacy of consideration is not
sufficient, in and of itself, to avoid a contract, and cases
from the Supreme Court of the United States are cited
in support of the ruling.

In 2 Pomeroy's Eq. Jur. § 926, the author says:

"The rule is well settled that where the parties were both
in a situation to form an independent judgment concerning
the transaction, and acted knowingly and intentionally, mere
inadaequacy in the price or in the subject-matter, unaccom-
panied by other inequitable incidents, is never of itself suffi-
cient ground for canceling an executed or executory contract.
If the parties, being in the situation and having the ability to
do so, have exercised their own independent judgment as to
the value of the subject-matter, courts of equity should not
and will not interfere with such valuation."

The same author at section 927 says that there are a
few cases in which contracts have been canceled solely
on the ground of inadequacy of consideration, but in all
such cases the inadequacy of price is so gross that it

shocks the conscience and furnishes satisfactory and decisive evidence of fraud. See, also, case note to the case of Brewer v. Cobb, L. R. A. 1916D, 382.

[2] But in this case we are not dealing with such an inadequate consideration, because while the trial court found that the consideration was grossly inadequate, it refused to find that there was any fraud; consequently we have only a case of inadequate consideration, with no elements of fraud presented. Inadequacy of consideration is always a circumstance to be taken into consideration in determining the question of fraud. But here the court refused to find that there was any fraud, and from a review of the evidence there were no facts or circumstances indicating any fraud whatever. The appellee argues that the subsequent finding made by the court five days after the judgment was signed qualifies the other finding as to consideration, and clearly shows that the inadequacy of consideration did not amount to proof of fraud; but, as we have shown above, the finding itself did not have this effect, and the subsequent finding is in no way essential to the determination of the question. It is perhaps proper to remark that the finding could have no effect whatever in determining the merits of the appeal, because it was not only made after the judgment had been signed, but was made without any notice to the appellant. Parties are always entitled to notice when any action is proposed to be taken by the court which may be prejudicial to their interest, unless such notice is waived. Fullen v. Fullen, 21 N. M. 212, 153 Pac. 294. Consequently this subsequent finding may be laid aside from further consideration.

[3] What was the effect of the first supplemental finding by the court that there was nothing in the appearance, manner of testifying, or attitude on the witness stand of either of the three doctors to cause the court to disbelieve any of their testimony? One of the doctors had attended the elder Ravany upon several occasions in as many years, and gave it as his opinion that

his mind was impaired to such an extent that he was incapable of transacting business involving the amount of money paid for the annuity in question. The other physicians testified more as experts, and concurred in the same opinion. As we have said, there was evidence in the case the other way. This finding, it is argued, has a neutralizing effect upon the finding by the court to the effect that Ravany was possessed of mental power and ability sufficient to understand, and did understand, the nature and character of said contract. In other words, the argument proceeds, this finding that there was nothing to cause the court to disbelieve these witnesses who testtified to the contrary, in some way has the effect of destroying the ultimate fact found by the court, but clearly it can have no such effect. It is not a finding of any fact in the case, and the office of findings of facts is to find the ultimate facts at issue in the case. A finding to the effect that there was nothing in the appearance or manner of testifying of a witness to cause the court to disbelieve his testimony is wholly immaterial, and can be given no weight whatever in considering the effect of an ultimate finding of fact. In the case of Fisher, Adm'r, v. Louisville, etc., Railway Co., 146 Ind. 561, 45 N. E. 690, the court said:

"In determining whether the facts found are sufficient to entitle a person having the burden of proof to a judgment, this court can only consider the facts properly found, disregarding evidentiary facts, legal conclusions and matters not within the issue."

In the case of Coffinberry v. McClellan, 164 Ind. 131, 73 N. E. 97, the court said:

"Evidentiary matter is to be disregarded, and ultimate facts only are to be considered in determining the legal conclusions to be drawn from a special finding."

Many other authorities to the same effect might be cited, but the question is too elementary to require elaborate consideration.

[4] Thus eliminating the above question from consideration, we have the final question for determination

as to whether there is a conflict between finding No. 9 for the appellants quoted above and finding No. 1 for the appellee. First, as to the finding for the appellee. This was the ultimate question for determination in the case.

"Mental weakness, whether resulting from sickness, age, or any other cause which does not totally destroy the ability to comprehend the nature and effect of the transaction furnishes no ground for the avoidance of a contract entered into by such person, in the absence of evidence showing fraud, duress, or undue influence." Elliott on Contracts, § 365

In a case note to the case of Sprinkle v. Wellborn, 3 L. R. A. (N. S.) 174, will be found many authorities and cases discussing the question, all in practical accord, however, with the above statement from Elliott on Contracts. Thus we see that in the above finding the court determines the ultimate fact in the case.

[5] What, then, is the effect of the ninth finding, found at the request of the appellants, to the effect that the elder Ravany at the time he made the contract did not have the mental capacity to understand and know even approximately the expectancy of life of his daughter, Elvina Ravany, and that the policy was based on the expectancy of life of the average sane person, aged 43½ years? We do not regard this as a finding of any ultimate or essential fact in the case. The question for determination was not as to whether he had the mental ability to comprehend the basis upon which the insurance company determined the annual annuity which a given amount of money would buy. That might be something of which a person of average mental ability without education along these peculiar lines would have no adequate comprehension. Take, for example, the case of an individual purchaser of a mechanical device of any kind. Does the fact that the individual has not the mental capacity to understand the process by which the article is manufactured, or the elements of cost which go to make up its value, render such a contract susceptible to cancellation at the suit of the purchaser? Here the court found that Ravany had the mental capacity

to understand the nature and character of the contract which he was making, i. e., that for a given amount of money he was purchasing a semiannual annuity for his daughter, which would be paid her so long as she should live. This, as we have said, was the ultimate question for determination, and not whether he knew the process by which the company arrived at the amount which it would pay for a given amount of money. There was therefore no conflict in the ultimate facts found.

The judgment was in accordance with such facts, and, as there was substantial evidence to sustain the same, the judgment will be affirmed; and it is so ordered.

PARKER, J., concurs.

RAYNOLDS, J., having tried the case below, did not participate.