88 P.2d 271

**FEATHERSTONE v. WALKER et al.**
No. 4373.

Supreme Court of New Mexico.
Feb. 24, 1939.

Rehearing Denied March 21, 1939.

Grace McDonald Phillips, of Roswell, and Howard B. Rich, of Lovington, for appellant.

Holt & Holt, of Las Cruces, for appellees.

SADLER, Justice.

This is an appeal from a judgment of the district court of Lea County. The appellant, O. F. Featherstone, who will be referred to hereinafter as plaintiff, sued the trustees of a so-called oil and gas pooling agreement to compel recognition by them of his claimed interests in the pool. The trustees named as defendants are Jess C. Williams, Gus Manasse and Frank A.

Hawley. The asserted interests of the plaintiff in the pooling agreement arise by virtue of independent transactions between him and L. W. Walker in one instance and between the plaintiff and Lena Cox in the other instance. L. W. Walker and Lena Cox were also joined as defendants in the suit.

The plaintiff, Featherstone, defendants Walker and Cox and others, all being either holders of or applicants for oil and gas prospecting permits issued by the Secretary of the Interior, covering lands on the public domain under the so-called "Leasing Act", enacted by Congress and approved February 25, 1920, c. 85, § 13, 41 Stat. 441, 30 U.S.C.A. § 221, entered into an agreement that the permits and applications for permits should be pooled, each person to own an undivided one-eighteenth interest in the whole. Pursuant to the agreement each permit or application therefor was assigned and transferred to the three trustees of the pool, Manasse, Williams and Hawley, all being residents of Las Cruces, New Mexico. The trustees were given full control of said permits and applications with power to make conveyance thereof.

These oil and gas prospecting permits, in accordance with the act of Congress aforesaid, provided that the permittee should mark each of the corners of the claim within ninety days from the date of the permit with substantial monuments in such manner that the boundaries could be readily traced on the ground and in ad-dition should post in a conspicuous place upon the lands embraced in the permit a notice that the permit had been granted and a description of the lands covered thereby.

Inasmuch as the plaintiff's claims of interests in the pooling agreement by virtue of an assignment and an agreement to assign from the defendants Walker and Cox, respectively, depend on entirely different facts, we shall first consider and dispose of the claim of interest under the agreement to assign executed by the defendant Cox. This instrument is referred to by the parties both as an assignment and as an agreement to assign.

The Lena Cox permit was issued by the Secretary of the Interior through the United States Land Office at Las Cruces under date of October 1, 1934. Featherstone was a surveyor and himself a permittee, in on the pooling agreement and, of course, familiar with the requirement for marking of boundaries and posting. Within the ninety day period for meeting these requirements, and as a volunteer, he wrote defendant Cox, reminded her of a previous letter touching the posting of her permit, cautioned that the time for compliance with the posting requirement was limited and offered to do the work upon stated terms. He requested a prompt and telegraphic reply. Receiving none, he voluntarily staked and posted the Cox permit within the ninety day period. Defendant Cox herself defaulted in the matter of performing this work or of author-

izing anyone expressly to do the work for her.

More than ten months after the work was done by Featherstone, and when the time for its performance had long since expired, he had a meeting with the defendant Cox. He disclosed to her that he had marked and posted the property and had prepared a certificate on her behalf in due form, showing the staking and the posting of same. He offered to deliver to her this certificate in exchange for an undivided one-half of her interest in the permit and pool. She accepted his offer and delivered to him a written agreement to assign this interest, receiving in exchange the certificate of staking and posting. More will be said later upon the question whether Miss Cox executed this agreement to assign as a result of coercion or misrepresentation on the part of Featherstone. It is sufficient now to say that she did execute it and that subsequently she paid over to Featherstone, as the holder of one-half of her interest in the permit and pool, $152, being one-half of the amount which the trustees had paid her from the pool after she had received the certificate of posting from Featherstone.

In his complaint the plaintiff, Featherstone, alleged that the defendant trustees had notice of the so-called assignment to him of one-half of Miss Cox's interest in the permit and pool, but in disregard of such notice had paid and set over to her the entire one-eighteenth share inuring to the Cox permit of $5472 obtained by the trustees in the administration of the trust under the pooling agreement, to-wit, $304. As against the trustees the plaintiff prayed that they be compelled to account to him for any additional funds wrongfully held or wrongfully paid over to the defendant Cox and that his rights under said agreement be declared and established both as against the trustees and as against the defendant Cox.

Answering and cross-complaining, defendant Cox alleged she had been induced to execute the agreement with plaintiff through coercion and fraudulent representations entitling her to rescind same. She prayed judgment against him for the sum paid over by virtue of the assignment, to-wit, $152, less $20, or such other sum as the court should deem reasonable for his staking and posting of her permit; that the agreement to assign to plaintiff one-half of her interest in the Cox permit and pool be cancelled and rescinded and for general relief.

The alleged fraud and coercion arise from this circumstance. Miss Cox permitted the time to pass without staking and posting the lands described in her application for permit. The plaintiff as a volunteer performed this work. As heretofore indicated, he prepared on her behalf a certificate in due form showing that the work had been done. The furnishing of the proof contained in the certificate was essential to prevent the application from lapsing and becoming forfeited. There seems to be no dispute between the

parties as to this fact. No doubt the agreement of opposing counsel upon this phase of the case arises from the language of the act itself and the interpretation given such language by the Secretary of the Interior. In this behalf the act provides:

"The applicant shall, within ninety days after receiving a permit, mark each of the corners of the tract described in the permit upon the ground with substantial monuments, so that the boundaries can be readily traced on the ground, and shall post in a conspicuous place upon the lands a notice that such permit has been granted and a description of the lands covered thereby." 41 Stat. 441, U.S.C.A., Title 30, § 221.

In Departmental Decisions, the posting requirement has been given the effect stated by plaintiff to defendant Cox, viz., as mandatory and the failure to stake and post as subjecting the application for permit to forfeiture.

"In making an application for extension of time the permittee must show that the corners of the claim have been marked with substantial monuments and that a notice has been posted as required in paragraph 1 of the permit as there is no provision of law under which the time may be extended for compliance with that requirement." 50 Land Dec. 568. See, also, 52 Land Dec. 363(1).

"As stated hereinbefore, the monumenting of the ground embraced within an approved permit and the posting of notice is a mandatory statutory requirement." Purvis v. Witt, 49 Land Dec. 260.

"The permit will be subject to cancellation by the Secretary of the Interior for failure of the permittee to comply with any of the conditions enumerated therein * * *." 47 Land Dec. 443.

The plaintiff, having done the work and holding the certificate, informed Miss Cox that such would be the effect of her failure to produce a certificate of the kind he held and bluntly stated that his terms for its delivery were an undivided one-half of her interest in the permit and pool. She hesitated, vacillated and agreed.

■ This, as we view the matter, is a fair appraisement of the evidence. Upon it, the trial court based a finding of misrepresentation and coercion. We are unable to see either in the evidence. Counsel for this defendant do not challenge the truth of the statement that proof, in the form of a certificate that staking and posting had been done, was indispensable to perfecting the application for permit and its issuance. The plaintiff told her no more. The charge of fraud must fail.

■ The claim of coercion does not rest upon stronger ground. This defendant was told frankly but truly that plaintiff possessed something she must acquire in order to perfect her permit. She might have refused to meet his terms and suffered her permit to lapse. The fact that her desire to retain it was stronger than any resentment she then may have felt at the harshness of plaintiff's terms does not

constitute coercion. She was still a free agent. She could accept or reject those terms and abide the consequences. That she does not now offer to do for, having possessed herself of the certificate, she seeks cancellation of her agreement which alone gave her that possession. There was no coercion.

In disposing of this branch of the case we express no opinion upon the question whether a staking and posting by a pure volunteer, neither expressly nor impliedly authorized by the permittee, through attempted ratification, may be regarded as compliance with 41 Stat., U.S.C.A. Title 30, § 221, quoted supra, if challenged by the government. The question is not presented since for obvious reasons neither party has seen fit to raise it.

We turn now to a consideration of the appeal in so far as it relates to the controversy between the plaintiff, Featherstone, on the one hand, and the defendant Walker, on the other hand. This controversy involves also the three above named trustees as defendants. This dispute between Featherstone and Walker revolves about the meaning of an assignment from the latter to the former. Walker, as an applicant for an oil and gas prospecting permit, Serial No. 045746, on the records of the United States land office at Las Cruces, engaged Featherstone to stake and post the permit and furnish certificate thereof, agreeing to pay him for this service the sum of $20. Being unable to pay him the agreed sum when the work was finished, Walker, in settlement of the bill, later assigned an interest under the permit to Featherstone by an instrument which so far as is material reads as follows:

"That the said party of the first part, for and in consideration of the sum of Ten Dollars ($10.00) good, lawful money of the United States, paid to me, in hand by the said second part, the receipt whereof is hereby acknowledged, does remise, release, and quitclaim, and by these presents, does release, remise, and quitclaim unto the said second party and to his heirs and assigns forever, all the right, title, interest, claim and demand whatsoever, of the said first party, in and to the following described undivided interest in that certain oil and gas prospecting permit, known as Las Cruces Serial No. 045772, this instrument conveying an undivided one-half in and to:

| Subdivision | Section | Township | Range |
|---|---|---|---|
| All | 4 | 9 S | 36 E |
| " | 5 | 9 S | 36 E |
| " | 6 | 9 S | 36 E |
| S2 | 8 | 9 S | 36 E |
| S2 | 33 | 8 S | 36 E |

"This agreement subject to a certain pooling of permit interest in which Gus Manasse, Jesse C. Williams, and Frank A. Hawley are trustees.

"It being the intent of the Grantor herein to convey to the Grantee herein an undivided one-half interest in and to all of his rights of whatsoever kind and nature

in and to the Oil and Gas Prospecting Permit in the above described land.

"To have and to hold all and singular the above mentioned and described premises, with all appurtenances and privileges and all rights thereunto belonging, or in anywise appertaining and all the estate, right, title, interest and claims whatsoever of the said first party, either in law or equity, to the only proper use, benefit and behoof of the second party, his heirs and assigns, forever. * * *"

About a year prior to the execution of this assignment eighteen holders of permits or applicants therefor, among them Walker and Featherstone, agreed to pool their permits. A trust agreement was executed by the permittees whereby they assigned and transferred to the three trustees above named all of their "right, title and interest in and to" certain described oil and gas permits. The terms of the trust as set out in the trust agreement are as follows:

"That the said Trustees shall have full power and authority to sell, assign, transfer, lease, contract for the drilling for oil and gas, and the prospecting therefor, all the above described premises and permits, either in whole or in part, for such price as he may deem sufficient, and upon such terms as he may deem advisable, and to perform any and all duties pertaining to same in the same manner, and to the same extent as we could do in our own name, and we hereby ratify and confirm any sale or transfer, or contract made in reference

to the above described property by our said Trustees. The said Trustees before entering into any sale or contract with reference thereto shall procure the consent of as many as six of the principals hereto; but any conveyance, transfer or assignment, or contract with reference thereto, signed by said Trustees, in which it is recited that said consent has been obtained, shall be conclusive proof that said consent was obtained by said Trustee, and we, and each of us, shall be bound thereby to the same extent as if we had entered into such conveyance, transfer, assignment or contract in person, and signed same in person.

"It is further agreed that none of the principals hereto shall be permitted to withdraw from this agreement and trusteeship.

"Upon the consummation of any sale, deal or contract by the Trustees, and the receipt by them of any compensation therefor, the same shall be equally distributed among the principals hereto, after the expenses incurred by the Trustees have been paid, unless it shall be necessary for the Trustees to retain same, or part of same, for the management and execution of the trust, and the Trustees shall be the sole judges of such necessity. * * *"

The trustees later paid over to Walker the sum of $304 representing the distributive share to which an undivided one-eighteenth interest in the pool was entitled from proceeds of the sale of certain acreage other than the particular acreage de-

scribed in the Walker permit. They did so with knowledge that the plaintiff Featherstone, held the assignment mentioned. Walker refused to account to Featherstone for any part of the sum so received. This suit followed. In it the plaintiff not only asked judgment against the defendant Walker and the trustees for $152, as one-half of the sum so paid over to Walker by the trustees, but prayed in addition that his rights under the assignment be declared and established as against all of the defendants.

The rival contentions are (1) on the part of the plaintiff, that the assignment vests in him an undivided one-half of Walker's interest in the pool; (2) on the part of the defendants, that the assignment gives plaintiff only one-half of an undivided one-eighteenth interest in the Walker permit asserted by Walker to be the only remaining interest with him in his own permit. The defendants' contention rests on the assumption that each of the eighteen permittees by virtue of the trust agreement is the owner of an undivided one-eighteenth interest in his own permit and that of every other permittee.

The plaintiff says the terms of the assignment are so plain and unambiguous that when viewed in the light of the pooling and trust agreement to which it refers, parol evidence is inadmissible to vary the terms of the assignment. Over vigorous objection of the plaintiff at the trial the defendant Walker was permitted to testify that it was understood by the parties at the time that Featherstone was to receive under the assignment only an undivided one-half of an undivided one-eighteenth interest in the Walker permit alone with none of the incidental rights appertaining to the Walker permit by reason of its presence in the pool. The plaintiff denied the parol testimony of the defendant Walker thus given in evidence. His conduct prior to suit in demanding one-half of what Walker received from the pool reflected a contrary understanding directly conformable, as he contends, to the plain and unambiguous terms employed.

We agree with the plaintiff that the trial court improperly admitted parol testimony to vary the meaning of contracts unambiguous in this particular. We say "contracts" because the assignment refers to the pooling trust agreement in a manner which could have left no doubt in the minds of the parties, both of whom were members of the pool, as to the instrument referred to. The granting clause of the assignment reads: "* * * party of the first part * * * does remise, release, and quitclaim * * * unto the said second party * * * all of the right, title, interest, claim and demand whatsoever, of the said first party, in and to the following described undivided interest in that certain Oil and Gas Prospecting Permit, known as Las Cruces Serial No. 045772, this instrument conveying an undivided one-half."

The instrument purports to remise, release, and quitclaim unto Featherstone

all of Walker's right and interest in "the following described undivided interest" in the permit referred to. The only undivided interest thereafter described is "an undivided one-half" interest. So upon its face the assignment unquestionably purports to transfer to Featherstone an undivided one-half interest in the Walker permit. But Walker no longer owned one-half nor any other interest in his permit. He previously had assigned all interest in it to the three trustees, Manasse, Williams and Hawley. All he now owned was an undivided one-eighteenth interest in the pool subject to the provisions of the pooling agreement. Hence, we find the parties taking notice of this situation in the assignment. The granting clause thereof is followed immediately by this language, to-wit: "This agreement subject to a certain pooling of permit interest in which Gus Manasse, Jess C. Williams, and Frank A. Hawley are trustees." This language serves to link the assignment to the pooling agreement and the two instruments should be examined together before a declaration of ambiguity in the assignment is announced. Schrader v. Gypsy Oil Company, 38 N.M. 124, 28 P.2d 885, 887. The mineral deeds involved in the Schrader case contained a recitation that they were subject to an oil and gas lease. Referring to a provision in the deed touching royalty, the court said: "Thus the lease provision as to royalty is essential to give meaning to the deed provision. The former is necessarily embodied in the latter."

Upon the question of the duty to construe the two instruments together, see, also, Bass v. Occidental Life Ins. Co., 19 N.M. 193, 142 P. 798.

The language of the assignment making same subject to the terms of the pooling agreement and identifying it was plainly notice to Featherstone that the Walker permit was owned by the trustees of the pool, thus rendering clear the purpose of the assignment to transfer to Featherstone an undivided one-half of the interest carried by the Walker permit in the pool, viz., an undivided one-thirty-sixth interest. Again and again in their brief the defendants place reliance on the language of the assignment making it subject "to a certain pooling of permit interests", as creating ambiguity justifying the admission of parol testimony. This, however, was connected immediately with other language identifying the pooling agreement by naming the trustees. Walker and Featherstone were both members of the pool. A mere reading of the pooling agreement answers every question put by counsel suggestive of ambiguity in the assignment through the use of the language just quoted. We first must consider the assignment and the pooling agreement together before permitting ourselves to sense ambiguity. When we do so, there is none.

That parol testimony is inadmissible to vary or contradict the terms of otherwise unambiguous writings is so well settled as to make citation of authority scarcely warranted. But, see, Locke v.

Murdoch, 20 N.M. 522, 151 P. 298, L.R.A. 1917B, 267; Prentice v. Cain, 27 N.M. 368, 202 P. 121; Chaves County Bldg. & Loan Ass'n v. Hodges, 40 N.M. 326, 59 .P.2d 671; Dyer v. Compere, 41 N.M. 716, 73 P.2d 1356. The record before us does not present facts bringing the case within any of the recognized exceptions to the rule applied or stated in Locke v. Murdoch, supra; Strickland v. Johnson, 21 N.M. 599, 157 P. 142; People v. Orekar, 22 N. M. 307, 161 P. 1110 and Turner v. Denton, 42 N.M. 630, 83 P.2d 459. Hence, it was error to admit the testimony objected to since its obvious purpose was to give meaning to the assignment read in the light of the pooling agreement contrary to that expressed upon .its face. The cases primarily relied upon by the defendants, viz., Hill v. Hart, 23 N.M. 226, 167 P. 710, Franciscan Hotel Co. v. Albuquerque Hotel Co., 37 N.M. 456, 24 P.2d 718 and Hobbs Townsite Co. v. Hobbs, 38 N.M. 331, 32 P.2d 818, 819, have been carefully examined. We find them not inconsistent with the present holding. In Hill v. Hart and the Franciscan Hotel Company case the rule that parol evidence is admissible to clarify, though not to contradict, language of doubtful meaning was affirmed. That is not the case here. When the two instruments are read together, there is no doubt. In Hobbs Townsite Company v. Hobbs, a situation differing from the one now before us was presented, as reflected by the closing paragraph of .the opinion, reading: "We must conclude that the language of this deed, plus the facts to which it points, affords some ground for each of the conflicting claims here asserted; and that we cannot make the decision with assurance from the face of the deed itself. If we are correct in this, it follows that the court properly resorted to evidence of actual intent to resolve the matter."

The plaintiff also complains of the trial court's conclusion that the sum of $20 is a grossly inadequate consideration for the assignment by Walker to Featherstone of an undivided one-half of an undivided one-eighteenth interest in the entire pool. In support of this conclusion defendants point out that the pool embraces approximately forty thousand acres of land; that two of the eighteen permits embraced in it alone have produced upon a sale the sum of $5,472; that no reasonable man in his right mind would dispose of one-half of his one-eighteenth interest in a pool capable of producing such returns for the mere pittance of $20. This presents one side of the picture.

On the other hand, the plaintiff calls our attention to the fact that defendant Walker paid only $32 for his permit which with the expense of staking and posting added makes its total cost only $52; that being unable to pay in cash the agreed charge for staking and posting, Walker found it to his convenience to transfer to Featherstone an undivided one-half interest in the permit in satisfaction of the bill. In addition, the plaintiff mentions the highly speculative character of the investment; that the entire acreage at the time of the

assignment was and still remains purely "wildcat" territory from the standpoint of oil and gas possibilities and that so far as Walker could have known at the time he agreed to assign this interest, he was merely engaging another to share a possible total loss.

We think the trial court erred in the conclusion assailed. Fraud is nowhere charged. We see no inadequacy of consideration when viewed from the standpoint of the parties at the time they contracted. But granting it, inadequacy of consideration is not, of itself, sufficient to avoid a contract, in the absence of conclusive and decisive evidence of fraud. Fraser v. State Savings Bank, 18 N.M. 340, 137 P. 592; Ravany v. Equitable Life Assurance Society, 26 N.M. 514, 194 P. 873.

It follows from what has been said that the judgment appealed from must be reversed. The cause is remanded to the district court of Lea County with directions to set aside the judgment and for further proceedings consistent with the views herein expressed. The plaintiff (appellant) will have judgment for his costs.

It is so ordered.

BICKLEY, C. J., and ZINN, J., concur.

BRICE and MABRY, JJ., did not participate.