786 P.2d 37

**Phillip BALLENGEE and Angela Ballengee, Plaintiffs–Appellees,**

v.

**NEW MEXICO FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant–Appellant.**

**No. 18286.**

Supreme Court of New Mexico.

Jan. 22, 1990.

John A. Mitchell, Santa Fe, for defendant-appellant.

Threet & King, Martin E. Threet, Albuquerque, for plaintiffs-appellees.

OPINION

SOSA, Chief Justice.

### PARTIES ON APPEAL

Defendant-appellant, New Mexico Federal Savings and Loan Association (the S & L), appeals a judgment awarded by the trial court on January 11, 1989, to plaintiffs-appellees, Phillip and Angela Ballengee (the Ballengees). The Ballengees had filed a complaint for declaratory judgment on November 13, 1986, asking the court to declare the parties' rights and liabilities in certain notes and a mortgage. The S & L had filed a third-party complaint against Diversified Investment Services (DIS), but DIS defaulted and is not a party to this appeal.

### FACTS

On April 26, 1984, the Ballengees borrowed $46,000 from DIS and gave DIS a note (captioned "COMBINED NOTE AND SECURITY AGREEMENT") as well as a mortgage on their home in Albuquerque. The mortgage contained the words: "Mortgagee reserves the right to transfer, assign and/or convey this mortgage without consent of Mortgagor." DIS gave the Ballengees $9,000 cash at the time of closing the transaction, and on May 15, 1984, executed a note, entitled "Promissory Note," in favor of Ballengees in the amount of $37,000. This note was delivered to the Ballengees on September 28, 1984. DIS assigned the Ballengees' note and mortgage to the S & L on February 12, 1985. In a letter to the Ballengees, DIS advised the Ballengees, "[Y]ou will now make all payments to [the S & L] with the monthly payment coupon." On March 18, 1985, the S & L advised the

Ballengees in writing, "Your mortgage loan with DIS has been assigned to [the S & L]." On May 29, 1985, DIS executed a document in favor of the S & L captioned "ASSIGNMENT OF MORTGAGE." In its pleadings, the S & L refers to this assignment as a ratification "of the earlier *de facto* assignment."

After DIS' assignment of the Ballengees' note to the S & L, DIS paid some $400 per month to the S & L to make the payments on the Ballengees' note, and paid investment income of nearly $300 per month directly to the Ballengees. Then, DIS began to experience financial difficulties, ceased making regular payments to the Ballengees, and advised the Ballengees that they would have to make payments to the S & L themselves in order to keep the assigned note current. The Ballengees for some twenty months made payments directly to the S & L. The Ballengees consulted an attorney to determine if they could cancel their contract with DIS. The attorney advised them to keep making payments to the S & L. They negotiated with the S & L a change in the date of their monthly payments.

### THE RULING BELOW

Trial was held on August 23, 1988. In a letter to counsel dated October 7, 1988, the trial court summarized its findings, in pertinent part, as follows:

The evidence and exhibits in this case disclose that [the S & L] was not a holder in due course of a note and mortgage assigned to them by [DIS] * * * * It is my opinion that [the S & L] is subject to all of the defenses that [the Ballengees] would have against [DIS].

It is further my opinion that [the Ballengees] would have a right of setoff against [DIS] because of it's [sic] note to [the Ballengees] and, therefor, [sic] that setoff would be good as against [the S & L].

In its findings of fact and conclusions of law dated October 25, 1988, the court found, inter alia:

The investment scheme and the $37,000 promissory note from [DIS] to [the Bal-

lengees] was a security transaction, as a security is defined by Section 58–13B–1 *et. seq.* [sic].

The investment scheme and note were not registered as required by law.

[The Ballengees] have made regular payments on the instrument to [the S & L] * * * for a total of $18,453.63.

. . . .

The obligatory instrument given to [DIS] was not a negotiable instrument as defined by Section 55–3–104 NMSA 1978 Comp.

. . . .

Pursuant to Section 58–13B–40, NMSA 1978 [the Ballengees] are entitled to a refund of the consideration paid for the unregistered security, the $37,000 promissory note, this is an offset that they can claim against [the S & L].

. . . .

The mortgage placed of record against [the Ballengees'] property should be deemed satisfied.

In its judgment entered January 11, 1989, the court ruled in pertinent part as follows:

The Combined Note and Security Agreement ... from [the Ballengees] to [DIS] * * * is not a "negotiable instrument" as defined by the Uniform Commercial Code ... Section 55–3–104 ... and [the S & L] is a holder of the Note, but it is not a "holder in due course," as defined by the UCC, Section 55–3–302 * * * *

[The S & L] ... took the note subject to claims and defenses as defined by the UCC, Section 55–3–306.

[The Ballengees], having admitted their signatures on the Note, satisfied their burden to establish a defense thereto as required by the UCC, Section 55–3–307 ... to-wit:

The promissory note dated May 15, 1984 from DIS to [the Ballengees] ... constituted a "security" as defined [in] * * * Sections 58–13–1, et. seq * * * and was sold in violation of the Securities Act. [The Ballengees] may assert against [the S & L] the above defense to the Note and * * * the Mortgage.

[The Ballengees] are not estopped by the Note and the Mortgage or by their conduct from asserting the above defense against [the S & L]. [The Ballengees] are entitled to enforce against [the S & L] ... the remedies provided in the Securities Act, Section 58–13B–42 ... which [the Ballengees] might have enforced against [DIS].

## ISSUES RAISED ON APPEAL

On appeal, the S & L contends (1) that the Securities Act relied on by the trial court (NMSA 1978, Sections 58–13B–1 to –56 (Repl.Pamp.1986)) did not apply to acts occurring before July 1, 1986, when the law took effect, and that even if the Act did apply, the Ballengees' sole remedy under the Act was against DIS to recover the amount paid less any income received; (2) that the Ballengees are estopped to assert both the invalidity of their note and any defense on the note against the S & L, and (3) that the Ballengees' note was a negotiable instrument under the UCC and the S & L is entitled to the rights of a holder in due course.

The Ballengees counter by arguing that the S & L was not a holder in due course because the Ballengees' note to DIS was not a negotiable instrument in that it does not contain the words "or order" on it, and was transferred by assignment and not by indorsement to the S & L. Further, the Ballengees argue, the court was justified in finding both that the DIS note to the Ballengees was an unregistered security and in finding that the Ballengees could set off the amount of this note against the mortgage and note held by the S & L.

## OUR HOLDING ON APPEAL

We affirm that portion of the trial court's ruling which voids the note and mortgage in the S & L's hands. The S & L may not collect the balance due on the note from the Ballengees. However, we reverse the trial court as to its measure of damages. We rule that the Ballengees are estopped to recover from the S & L any and all payments they made to the S & L up to the date on which suit was filed.

The crux of our holding involves the concepts of negotiation and negotiability. The note in question was negotiable but not negotiated. NMSA 1978, Section 55–3–201, provides, in pertinent part, as follows:

(3) Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified indorsement of the transferor. Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner.

Under prior law, "[A] note being so transferred, without indorsement, the holder acquired only such title thereto as the transferor had in the note, and it was subject to any defense which existed against the note in the hands of the original payee." *Hill v. Hart*, 23 N.M. 226, 234–35, 167 P. 710, 712 (1917).

This policy was adopted by the Uniform Commercial Code, as codified at NMSA, 1978, Section 55–3–306, which reads, in pertinent part:

Unless he has the rights of a holder in due course any person takes [a negotiable instrument] subject to: (a) all valid claims to it on the part of any person * * * *

Subsection (a), according to the official comment, "includes not only claims of legal title, but all liens, equities or other claims of right against the instrument or its proceeds. It includes claims to rescind a prior negotiation and to recover the instrument or its proceeds." *Id.*, Official Comment 2.

The distinction in prior law between assignment or other mere transfer of an instrument, and negotiation, has been continued into the UCC. *Security Pac. Nat'l Bank v. Chess*, 58 Cal.App.3d 555, 129 Cal. Rptr. 852 (1976). Hence, under Section 55–3–201, negotiation takes place only upon indorsement. That section also provides, "Transfer of an instrument vests in the transferee such rights as the transferor has therein * * * *" Yet, as the courts have interpreted this section,

[T]o hold ... that [this section] enables the transferee of a holder to become [without the necessity of indorsement] a holder who is then able, other conditions being met, to be a holder in due course, would be to render the other sections [of Article Three of the UCC] nugatory.

*United Overseas Bank v. Veneers, Inc.*, 375 F.Supp. 596, 605 (D.Md.1973).

Here, there being no indorsement, the S & L was not a holder in due course, and it took the note "subject to any defense which existed against the note in the hands of" DIS. *Hill*, 23 N.M. at 234–35, 167 P. at 712. That is, *as a mere assignee*, the S & L took the note subject to all defenses and equities to which the note was subject in the hands of DIS. *Estrada v. River Oaks Bank & Trust Co.*, 550 S.W.2d 719, 728 (Tex.Ct.App.1977). As the Supreme Court of Colorado has emphasized, "Two methods for transferring instruments evidencing legal rights are recognized: transfer and a special form of transfer, negotiation." *La Junta State Bank v. Travis*, 727 P.2d 48, 51 (Colo.1986) (en banc).

Here, the S & L could protect itself from the defenses available to the Ballengees against DIS only if the instrument had been properly negotiated. Or, to state the same proposition another way, because the note was not properly negotiated, the Ballengees may assert any defense against the S & L that they could have asserted against DIS, including the defense that the note was an unregistered security, voidable under NMSA 1978, Section 58–13B–42.

The Ballengees' defense is clearly contemplated by the language in the official commentary to Section 55–3–306, namely, "other claims of right against the instrument or its proceeds [as well as] claims to rescind a prior negotiation and to recover the instrument or its proceeds" NMSA 1978, § 55–3–306, Official Comment 2. Thus we affirm the trial court insofar as it ruled that the Ballengees may assert against the S & L any defenses permitted them against DIS under Section 58–13B–42.

■ However, we reverse the trial court as to its measure of damages. The Ballen-

gees are estopped to assert recovery of the payments they have already made to the S & L through the date suit was filed. Official Comment 2 to NMSA 1978, Section 55–3–104, provides:

> While a writing cannot be made a negotiable instrument within this article by contract or by conduct, nothing in this section is intended to mean that in a particular case a court may not arrive at a result similar to that of negotiability by finding that the obligor is estopped by his conduct from asserting a defense against a bona fide purchaser. Such an estoppel rests upon ordinary contract principles of the law of simple contract; it does not depend upon negotiability, and it does not make the writing negotiable for any other purpose.

Here, while the Ballengees' conduct does not rise to the level of estoppel insofar as absolute negotiability of the note is concerned, it nonetheless does constitute estoppel insofar as it relates to their installment payments to the S & L on the note. The Ballengees made these payments not without forethought, and, after a certain point, following legal advice. Further, the S & L accepted the payments in good faith. Further, there was detrimental reliance on the S & L's part. It took no action, either directly with DIS or by, perhaps, filing suit against it, to obtain the "unqualified indorsement" to which the UCC says it had the "specifically enforceable right."

We thus hold that the doctrine of equitable estoppel prevents the Ballengees from recovering prior installments up to date of suit. We have held in a somewhat similar case that "equitable estoppel results from a course of conduct which precludes one from asserting rights he otherwise might assert against one who has in good faith relied upon such conduct to his detriment." *First State Bank at Gallup v. Clark*, 91 N.M. 117, 121, 570 P.2d 1144, 1148 (1977). In the facts before us, insofar as the damages discussed above are concerned, we hold that a proper case of equitable estoppel has been shown.

For the foregoing reasons the judgment of the trial court is affirmed in part, re-

versed in part, and remanded for entry of judgment in accordance with our opinion herein.

MONTGOMERY, J., specially concurs.

STEVE HERRERA, Judge First Judicial District, sitting by designation, concurs.

MONTGOMERY, Justice (specially concurring).

I concur in the foregoing opinion even though the result it reaches, as one commentator states, "seems questionable." *See* 4 W. Hawkland, UCC Series § 3–201:09 at 285 (1984):

> [I]f [an] instrument is payable to order, ... the transferee does not become a holder until the instrument has been properly indorsed; until then, he is a mere transferee. In order to become a holder in due course, he must be without notice and in good faith both at time of acquiring holder status and at the time of giving value. Since holder status is not acquired until the instrument has been indorsed, if prior to that time he receives notice of a claim or defense, he will be denied holder in due course status. Thus a good faith purchaser for value who merely forgets to obtain an indorsement and receives notice of a defense prior to obtaining the indorsement is denied the right to become a holder in due course. This result, which is clearly compelled by the Code, seems questionable.

Professor Hawkland goes on to point out that a transferee who gives value for the instrument is entitled to compel indorsement by the transferor, citing UCC § 3–201(3) (NMSA 1978, Section 55–3–201(3)). Since the transferee has this "specifically enforceable right," I would be inclined to favor applying the equitable maxim, "Equity regards that as done which ought to be done," 2 J. Pomeroy, Equity Jurisprudence § 363 (5th ed. 1941), and hold in favor of the S & L on the holder-in-due-course issue in this case. As Professor Hawkland states, if the transferee

has clear title and at the time of purchase was in good faith and without notice, there is no reason to subject him to the defense of any obligor with whom he has not dealt. Unlike the holder who has not given value and therefore can, after notice, protect himself by refusing to give the agreed consideration, the transferee who has merely failed to obtain the indorsement has no means of protecting himself. The failure to obtain the indorsement should not affect the relative equities between him and the obligor.

. . . .

> Nevertheless, except in the case of depository bank/transferees [citing *Bowling Green, Inc. v. State Street Bank & Trust Co.*, 307 F.Supp. 648 (D.Mass. 1969), *aff'd*, 425 F.2d 81 (1st Cir.1970) ], the clarity of subsection 3–201(3) has discouraged any court from holding otherwise.

Hawkland, *op. cit. supra* at 285–86.

Thus, a leading commentator in the commercial law field finds that the result in this case, although "questionable," is compelled by the Uniform Commercial Code and that the clarity of the statute has discouraged any court from reaching a contrary result. Professor Hart, another distinguished commercial law commentator, seems to approve this reading of the statute and the case law. He points out that the holdings in the *Bowling Green* cases— that the depository bank need not take by indorsement in order to be a holder—have been questioned and states:

> It would appear that the Code should be read to require an indorsement. Comment 7 to Section 3–201 states that "there is no effective negotiation until the indorsement is made. Until that time the purchaser does not become a holder
> * * * * "

2 F. Hart, Bender's UCC Service *Commercial Paper*, § 3.10 at 3–66 (1989).

There comes a time when judges, along with commentators, must put aside their inclinations and perceptions of the "relative equities" between the parties and yield to the language the legislature has enacted. Of course, commercial law has long fa-

vored the bona fide purchaser—a transferee for value, without notice—in order to promote the free flow of commerce, whether in land, commercial paper or other things of value. *See, e.g., First Nat'l Bank of Albuquerque v. Stover,* 21 N.M. 453, 155 P. 905 (1916) (bona fide holder of negotiable paper protected against defenses when without notice of defect). This policy, however, has now been implemented, insofar as negotiable instruments are concerned, in the specific language of Article 3 of the Uniform Commercial Code. A holder in due course gets the protection so long afforded by general principles of commercial law; a "mere transferee" does not. The Code tells us, specifically, who is and who is not a holder in due course. In this case, as the Chief Justice's opinion rules, the S & L was not a holder in due course.