[L.A. No. 30417. In Bank. May 21, 1975.]

RICHARD A. IBANEZ, as Executor, etc., et al.,
Plaintiffs and Appellants, v.
FARMERS UNDERWRITERS ASSOCIATION et al.,
Defendants and Respondents.

**COUNSEL**

Janet Vincent and Henry N. Cowan for Plaintiffs and Appellants.

Anderson, McPharlin & Conners, G. Wayne Murphy, Sheppard, Mullin, Richter & Hampton, Richard L. Lotts and Lorin H. Albeck for Defendants and Respondents.

**OPINION**

**RICHARDSON, J.**—In this case we consider various provisions of the California Uniform Commercial Code which govern the rights and duties of the owners of corporate securities which have been lost, destroyed or stolen. Plaintiffs, the owners of the securities in question, brought suit against defendant issuers to obtain replacement certificates contending that defendants had improperly registered a transfer of the securities upon a forged indorsement. (See Cal. U. Com. Code, § 8311.) Defendants, however, maintained that (1) the transferred securities were properly indorsed by plaintiffs and their successor in interest, (2) plaintiffs delayed unreasonably in notifying defendants of the missing securities (see Cal. U. Com. Code, § 8405), and (3) plaintiffs are, in the terms of the code, "otherwise precluded" from asserting the unauthorized indorsement (Cal. U. Com. Code, § 8311).

The trial court found for defendants on all three theories of defense. We have concluded that there was no substantial evidence in support of

theories 1 and 3 above, and that although theory 2 is supported by the evidence, the trial court's findings were inadequate on this issue. Accordingly, we reverse the judgment and remand the cause for additional findings on the subject of plaintiffs' delay in notifying defendants of the missing stock certificates.

The securities in question were originally held by Mayme Fildes in joint tenancy, some with her son Glenn and some with her son Roy. Mayme died on August 21, 1966, and shortly thereafter, Glenn promised Roy that he would arrange for the transfer of the securities, some of which were now owned outright by Glenn, and others by Roy. Glenn himself died on September 21, 1968. Although Glenn had informed Roy from time to time that he was "working on the transfers," there was no evidence that any such transfers had occurred prior to Glenn's death.

Upon Glenn's death, various steps were taken to locate the subject certificates. On September 23, 1968, Roy met with Richard Ibanez, Glenn's attorney and executor, and it was agreed that an attempt should be made to "marshall" Glenn's assets, including the certificates. On September 30, Ibanez and Mr. and Mrs. Thompson, friends of Glenn, spent an hour searching Glenn's home. Ibanez authorized the Thompsons to make additional searches the following week. According to Mr. Thompson, he searched Glenn's house 3 times within 10 days from Glenn's death (September 21), twice "extensively" and once "partially." No securities were found. Ibanez testified that he made two diligent searches for the stocks prior to his formal appointment on October 14, 1968, as Glenn's executor.

On October 4, Ibanez' own attorney, Janet Vincent, prepared a list of the missing securities and sent it to Roy for confirmation. Following his appointment as executor on October 14, Ibanez made a further search of Glenn's office and home. These searches, made on or about October 14 and November 4, respectively, were also unsuccessful. According to Thompson, he informed Ibanez and Vincent on November 3 or 4 that Glenn's house apparently had been broken into and some valuables taken. Roy made additional searches of Glenn's house during the period from November 12 through 19. According to Roy, Glenn and Mayme both were in the habit of hiding valuables in their house, and Roy had notified Ibanez of this information in letters of October 12 and November 1, 1968.

Sometime in early November, Ibanez realized the stocks were probably lost. On November 15, 1968, Vincent sent a letter to each of the

transfer agents explaining the situation and requesting information regarding the appropriate replacement procedure "in case we cannot find the stock certificates." The letter further stated, in closing, that "At this time we might as well assume we are dealing with lost stock certificates." Unfortunately, by the time this letter was received, most of the securities already had been transferred by defendants. By unknown means, the certificates had come into the possession of third persons who presented the certificates for transfer commencing on October 29, 1968. On January 7, 1969, Attorney Vincent, having learned that some of the missing certificates had been transferred, sent one of the defendants a "stop notice" to prevent further transfers. Similar notices were given to the other defendants shortly thereafter, and on January 21, Vincent wrote each defendant and formally demanded replacement of the cancelled securities, together with dividends owing thereon.

Following defendants' refusal to replace the securities, Roy and Ibanez (as executor of Glenn's will) brought the present action. As noted above, the trial court denied relief on three independent grounds. We consider each ground separately, but in slightly altered sequence.

## 1. Unauthorized Indorsements

■ Under California Uniform Commercial Code section 8311, "Unless the owner has ratified an unauthorized indorsement or is otherwise precluded from asserting its ineffectiveness (a) He may assert its ineffectiveness against the issuer . . . and (b) An issuer who registers the transfer of a security upon the unauthorized indorsement is subject to liability for improper registration (Section 8404)." The certificates at issue appear to be indorsed by Mayme, Roy and Glenn Fildes bearing their purported signatures. Accordingly, defendant issuers took the position at trial that the securities were not registered ˌupon an "unauthorized indorsement" under section 8311. The trial court agreed, finding that the signatures of Mayme, Glenn and Roy "are presumed to be genuine or authorized," (see Cal. U. Com. Code, § 8105, subd. (2)(b)), and that "Plaintiffs failed to establish by a preponderance of the evidence that the signatures . . . were not genuine or were unauthorized."

To the contrary, the evidence was overwhelming that the foregoing signatures were forged in furtherance of a scheme by third parties, who had stolen the certificates, to negotiate the stock to others. This evidence we do not describe because defense counsel so concedes. We conclude, accordingly, that plaintiffs satisfactorily established that the indorse-

ments borne by the certificates were forgeries, and that by reason of the "unauthorized" indorsements, section 8311 is properly invoked.

### 2. PLAINTIFFS ARE NOT "OTHERWISE PRECLUDED" FROM RECOVERY

■ An alternative ground for avoidance of the application of section 8311 of the California Uniform Commercial Code imposing liability upon the issuer for stock registration is that the owner, following an unauthorized indorsement *"is otherwise precluded from asserting its ineffectiveness . . . ."* (Italics added.) In the case before us, the trial court concluded that "By their conduct plaintiffs are 'otherwise precluded' from recovering from defendants . . . ."

The findings, however, do not explain the basis for the trial court's conclusion in this regard. It is likely that the court may have meant only that plaintiffs are precluded from recovery by reason of their unreasonable delay in notifying defendants of the missing securities (Cal. U. Com. Code, § 8405), an issue discussed in part 3 hereof. Other than the evidence of delayed notification, the record fails to support a finding that plaintiffs' conduct has precluded them from recovery.

Defendants suggest that the trial court's conclusion is supported by its finding that Roy failed to make a "reasonable effort to secure or maintain the securities . . . ." Yet the record does not establish that Roy, who continued to receive dividends on the stocks prior to Glenn's death, acted unreasonably in entrusting his brother Glenn with the task of transferring title to the securities following their mother's death. Moreover, nothing in the California Uniform Commercial Code suggests that the owner of lost or stolen securities forfeits his right to replace them merely by reason of his negligence in securing or maintaining them.

### 3. PLAINTIFFS' UNREASONABLE DELAY IN NOTIFYING DEFENDANTS

■ Under California Uniform Commercial Code section 8404, if the issuer has registered a transfer of a security to a person not entitled to it, the issuer on demand must deliver a like security to the true owner, unless (1) the security bore the necessary indorsements and the issuer had no duty to inquire into adverse claims, or unless (2) the owner "is precluded from asserting any claim for registering the transfer under subdivision (1) of the following section . . . ." (*Id.* at subd. (2)(b).)

Section 8405, subdivision (1), provides "Where a security has been lost, apparently destroyed or wrongfully taken *and the owner fails to notify the issuer of that fact within a reasonable time after he has notice of it* and the issuer registers a transfer of the security before receiving such a notification, the owner is precluded from asserting against the issuer any claim for registering the transfer under the preceding section . . . ." (Italics added.)

The trial court expressly found that plaintiffs failed to notify defendants of the lost or stolen securities within a reasonable time after plaintiffs had notice thereof. Specifically, the trial court found that plaintiffs had "notice" under section 8405, subdivision (1), as early as October 4, 1968, the date upon which Attorney Vincent compiled a list of the missing securities. The court further found that Vincent's letter of November 15, 1968, described above, was insufficient notice to defendants of the loss, and that, accordingly, notice was not given until January 1969, when Vincent wrote defendants, confirmed that the securities appeared to bear forged indorsements, and requested that stop notices be placed against the transfer of the certificates.

The record contains ample evidence to support the trial court's finding that plaintiffs had "notice" of the loss by October 4, 1968. By that date, several diligent searches for the securities had been conducted by plaintiffs and others and a list of the missing certificates had been prepared. Plaintiffs knew that Glenn had taken possession of the securities after Mayme's death, and also knew that Glenn often had hidden valuables around his house. After three initial searches of Glenn's house failed to turn up the missing securities and probably no later than October 4, 1968, plaintiffs reasonably should have realized that the securities were "lost, apparently destroyed or wrongfully taken" within the meaning of section 8405.

It has been urged, however, by plaintiffs that the language "after he has notice of it" in section 8405 requires that the owner of securities have *actual* as opposed to *constructive* notice of their loss, apparent destruction, or wrongful taking. Yet, as explained in the comment to the Uniform Commercial Code, section 8-405 (which section is identical to Cal. U. Com. Code, § 8405), the owner is estopped from asserting his claim for replacement "[b]y failing to notify the issuer within a reasonable time after he knows *or has reason to know* of the loss or theft of his security . . . ." (Italics added.) Furthermore, the same code comment also contains a "definitional cross reference" which includes

the term "notice" referring to section 1-201, presently 1201 of the code, which in subdivision (25), provides that "A person has 'notice' of a fact [under the code] when (a) he has actual knowledge of it; or (b) he has received a notice or notification of it; or (c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists. . . ." This definition of "notice" is made expressly applicable to the division of the code containing section 8405. (Cal. U. Com. Code, § 8102, subd. (5).) We conclude that section 8405 contemplates either actual or constructive notice. (Accord: *Weller* v. *American Telephone and Telegraph Co.* (Ct.Chan.Del. 1972) 290 A.2d 842, 845.)

Did plaintiffs delay unreasonably in notifying defendants of the missing certificates after having "notice" thereof? The trial court's findings and conclusions on the subject of plaintiffs' delay were based upon the assumption that Vincent's letter of November 15, 1968, was insufficient notice of the loss. The trial court assumed that no notice was given defendants until January 7, 1969. Accordingly, the trial court measured the reasonableness of plaintiffs' delay with reference to a period extending from October 4, 1968, to January 7, 1969.

Our independent analysis (see *Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]) of Vincent's November 15 letter convinces us, however, that it was sufficient to "notify" defendants of the missing certificates, as that term is used in section 8405. Turning once again to the definitional section of the code, section 1201, we note that under subdivision (26), "A person 'notifies' or 'gives' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course . . . ." In the instant case, Vincent's letter of November 15 informed defendants of all pertinent facts then known to plaintiffs, namely, that Glenn was supposedly arranging the stock transfer, that he died on September 21, 1968, that "[u]nfortunately we have not as yet been able to find the stock certificates," and that "At this time we might as well assume we are dealing with lost stock certificates." We conclude that the trial court should have found plaintiffs' November 15 letter adequate notification to defendants, and accordingly should have determined whether or not plaintiffs acted unreasonably in waiting until that date to give such notice to defendants.

As explained above, the trial court's findings were silent on the reasonableness of the delay. The California Uniform Commercial Code provides that "What is a reasonable time for taking any action depends

on the nature, purpose and circumstances of such action." (Cal. U. Com. Code, § 1204, subd. (2).) Such a determination is primarily a factual one best resolved by the trial court in the first instance. We cannot say as a matter of law whether or not plaintiffs' delay was reasonable. The evidence discloses a sequence of events following Glenn's death on September 21, 1968, which reasonably may have put plaintiffs on notice that the securities were lost or stolen. Although there was substantial evidence that plaintiffs' pre-November 15 delay was unreasonable, there was some evidence in support of a contrary finding. In view of the conflicting evidence on the issue, it is inappropriate to exercise our fact-finding power (Code Civ. Proc., § 909) to decide the issue. Instead, we will reverse the judgment and remand the cause for further trial limited to the issue of the reasonableness of plaintiffs' pre-November 15 delay in notifying defendants. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 337, pp. 3139-3140; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 559, pp. 4498-4499.)

We note that should the foregoing issue be decided by the trial court in defendants' favor, the judgment should nonetheless be modified by the trial court to reflect the fact that certain certificates were transferred by defendants *after* plaintiffs had notified them of the loss. With respect to such certificates, section 8405, subdivision (1), furnishes no defense to plaintiffs' action.

The judgment is reversed and the cause remanded for further proceedings consistent with the views hereinabove expressed.

Wright, C. J., Tobriner, J., Mosk, J., Sullivan, J., Clark, J., and Kaus, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.