[Civ. No. 46439. Second Dist., Div. Four. May 20, 1976.]

SECURITY PACIFIC NATIONAL BANK,
Plaintiff and Respondent, v.
J. THOMAS CHESS et al.,
Defendants and Appellants.

COUNSEL

Wainer & Stone and Ivan R. Wainer for Defendants and Appellants.

Munger, Tolles & Rickershauser and Harvey I. Saferstein for Plaintiff and Respondent.

OPINION

**FILES, P. J.**—This is a consolidated action upon thirteen installment notes, each executed by one of six defendants. The sole issue tried was whether or not the plaintiff was a holder in due course. The trial court, sitting without a jury, gave judgment for plaintiff, from which defendants appeal.

The notes involved here were executed between August and November 1969 and are a part of a larger number of notes payable to Petroleum Equipment Leasing Company of Tulsa, Oklahoma (hereinafter PELCO) as a part of oil drilling ventures, in which the makers were investors. These notes were transferred by PELCO to Equipment Leasing Company of California (ELC) who pledged them to plaintiff bank as security for loans. The loans to ELC are in default, and payments on the pledged notes stopped after February 1970.

The defendants pleaded a number of defenses, including fraud, failure of consideration, violation of federal and state securities laws, and an oral side agreement that payment was to be made only out of money derived from the production of oil and gas from wells drilled by PELCO. These defenses were based upon the alleged conduct of PELCO. Defendants did not dispute that the notes had been made and not paid. The superior court bifurcated issues and tried first the question whether plaintiff was a holder in due course. After a trial on this single issue, the court made findings of fact and conclusions of law to the effect that plaintiff was a holder in due course,[1] unaffected by any defenses which the defendants might have against PELCO and ELC.[2] Judgment was

---

[1]California Uniform Commercial Code section 3302, subdivision (1): "(1) A holder in due course is a holder who takes the instrument (a) For value; and (b) In good faith; and (c) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

[2]California Uniform Commercial Code section 3305: "To the extent that a holder is a holder in due course he takes the instrument free from (1) All claims to it on the part of any person; and (2) All defenses of any party to the instrument with whom the holder has not

thereafter entered in favor of plaintiff against the defendant makers for the respective unpaid balances.

The issues argued on this appeal will be discussed in two categories: First, whether the record established that plaintiff became a holder of the note; and second, whether the trial court erred in deciding, upon the evidence, that plaintiff had taken the notes in good faith and without notice of any defense against PELCO or ELC.

## I *Plaintiff as a holder.*

It is defendants' contention that plaintiff cannot be a holder in due course because it never became a holder within the meaning of section 1201, subdivision (20), of the California Uniform Commercial Code.[3]

They are met with the plaintiff's contention that that issue was removed from the case by a pretrial admission by some of the defendants.

Before trial, plaintiff served upon certain of the defendants a request that they admit, among other things, (a) that plaintiff is a holder of the notes; (b) each note was negotiated to plaintiff by ELC; and (c) each note was endorsed by ELC to plaintiff. Defendants denied the latter two requests, but failed to deny that plaintiff was a holder. During the course of the trial defendants made motions for judgment with respect to four notes which contained no indorsement from ELC to plaintiff. In the oral argument on those motions it became apparent that defendants' attorney thought that the word "holder" in the request for admissions meant physical possession, and not the definition in the code.[4]

---

dealt except (a) Infancy, to the extent that it is a defense to a simple contract; and (b) Such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and (c) Such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and (d) Discharge in insolvency proceedings; and (3) Any other discharge of which the holder has notice when he takes the instrument."

[3]Unless otherwise indicated all section numbers in the text refer to the Uniform Commercial Code as enacted in California.

Section 1201, subdivision (20), states: " 'Holder' means a person who is in possession of a document of title or an instrument or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank."

[4]At oral argument in this court, defendants' counsel pointed out, as evidence of good faith, that in their response to the request for admissions, they had denied indorsement and negotiation, without which plaintiff could not have become a holder.

The trial court made a comment which defendants apparently took to mean that they had been relieved of the effect of the admission; and the minute order denying the motion included this language: "support for denial of the motions is found without reference to the answers to request for admissions."

The findings of fact and conclusions of law, as typed upon the stationery of plaintiff's counsel, contained the statement that the motion to dismiss was denied "not on the grounds that in the Admission Requests the Defendants admitted that SPNB was a holder, but rather on one or all of . . . five grounds" which were thereafter delineated. Following the word "not" the word "only" is inserted in handwriting, and accompanied by the initials of the judge.

Though the record may appear ambiguous as to the trial court's intention, it is perfectly clear that the question whether plaintiff was a "holder" within the meaning of the Code was tried and was decided in the superior court. Under the circumstances defendants are entitled to a review on that issue in this court.

■ Each of the 13 notes involved in this appeal bears on the back side an indorsement from Petroleum Equipment Leasing Co. to Equipment Leasing of California.[5]

Although the language is that of assignment and guarantee, it is nonetheless effective as an indorsement. (See § 3202, subd. (4), and official comments 5 and 6.)

The transfer of the notes by ELC to plaintiff is evidenced by a series of separate written assignments executed by ELC, assigning the described notes to plaintiff as collateral security for any indebtedness of the assignor. These instruments are not attached physically to the notes.

---

[5]The form of the indorsement is as follows:
"ASSIGNMENT
"FOR VALUE.RECEIVED, the undersigned hereby assigns to EQUIPMENT LEASING OF CALIFORNIA, a corporation, its successors or assigns, all right, title and interest in and to the within note. The undersigned guarantees full performance of the note by the maker thereof and prompt payment of all sums due thereunder, together with all collection expenses. Any extension granted by the holder thereof to the maker of the note shall not in any manner release the undersigned.
"PETROLEUM EQUIPMENT LEASING CO.
"By [Signature of individual]"

■ Only 1 of the 13 notes bears an indorsement using the name of Equipment Leasing Company as indorser. Eight notes show on the back side a handwritten indorsement "Richard L. Burns" or "Richard L. Burns, Pres." Burns was at the time the president of ELC and there is no question of his authority, or any reason to doubt his intention thereby to effect a transfer of the notes to plaintiff. His handwriting therefore constitutes the signature of the corporation, under the principle that a party may adopt any form or symbol as its signature for a particular transaction. (See §§ 3401, subd. (2) and 1201, subd. (39); *Hilborn* v. *Alford,* 22 Cal. 482.)

■ Four of the notes contain no indorsement at all except that by PELCO to ELC.

Section 3202 states (in pertinent part):

"(1) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery.

"(2) An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof.

". . . . . . . . . . . . . . . . . ."

The instruments here in question were not payable to bearer. The notes were payable to the order of PELCO, who indorsed them to "Equipment Leasing of California, a corporation, its successors or assigns." This was a special indorsement in that it specified ELC as the person to whom the notes were to be paid.[6] The addition of the words "successors or assigns" did not operate to make the note payable thereafter to bearer.[7] The form of indorsement used upon these notes

---

[6]Section 3204:

"(1) A special indorsement specifies the person to whom or to whose order it makes the instrument payable. Any instrument specially indorsed becomes payable to the order of the special indorsee and may be further negotiated only by his indorsement.

"(2) An indorsement in blank specifies no particular indorsee and may consist of a mere signature. An instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone until specially indorsed.

". . . . . . . . . . . . . . . . . ."

[7]Section 3110, subdivision (1): "An instrument is payable to order when by its terms it is payable to the order or assigns of any person therein specified . . . ."

does not come within the statutory definition of "indorsement in blank." (See fn. 6, *ante.*)

Plaintiff argues that the indorsements to ELC and "its successors or assigns," combined with the separate documents by which ELC assigned to plaintiff, should be read together as making plaintiff the holder by indorsement. This argument confuses transfer with negotiation. The separate assignment is, of course, effective as evidence that the notes were transferred to plaintiff, and plaintiff became the transferee and owner, at least for security purposes.

But a transferee is not in this situation a holder. Negotiation of an order instrument depends upon indorsement, and indorsement "must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof." (§ 3202, subd. (2).) The defect in plaintiff's position is that nothing was written on the four notes by or on behalf of ELC.

■ Plaintiff also contends that it became a holder under sections 4205 and 4207.[8]

These sections have no application to the transfer of the 13 notes from ELC to plaintiff. Sections 4205 and 4207 are a part of division 4 entitled "Bank Deposits and Collections." Section 4205 applies to an item delivered to the bank for collection or for credit to the deposit account of the transferor.[9] Even if the 13 notes were to be collected by the bank so that the proceeds could be credited against the loan, the notes themselves were not "deposited" by ELC, and the proceeds were not credited to a deposit account. Plaintiff, of course, did not make the "statement . . . on the item" which section 4205 says is "effective as the customer's indorsement."

---

[8]Section 4205, subdivision (1): "A depositary bank which has taken an item for collection may supply any indorsement of the customer which is necessary to title unless the item contains the words 'payee's indorsement required' or the like. In the absence of such a requirement a statement placed on the item by the depositary bank to the effect that the item was deposited by a customer or credited to his account is effective as the customer's indorsement."

Section 4207 defines the warranties of a customer and collecting bank.

[9]The official comments to section 4205 state:

"Purposes: 1. Subsection (1) is designed to speed up collections by eliminating any necessity to return to a non-bank depositor any items he may have failed to indorse. . . . . . ."

Plaintiff also contends it acquired the status of a holder under the provision of section 3201[10] that "Transfer of an instrument vests in the transferee such rights as the transferor has therein . . . ." Plaintiff points out that its transferor, ELC, was unquestionably a "holder."

Prior to the effective date of the Uniform Commercial Code in California, this subject matter was covered by Civil Code section 3130, which was identical with section 49 of the Uniform Negotiable Instruments Law, reading as follows: "Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferor. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made."

Section 3201 continues the distinction existing under former law between mere transfer of an instrument and negotiation. (See A.B.A. Section of Corporation, Banking and Business Law, Uniform Commercial Code Handbook (1964) p. 103.)

Section 3201, like its predecessor, assures to the transferee the "rights" of his transferor—i.e., if ELC is entitled to recover on these notes, plaintiff is likewise so entitled.[11] But that gives no help to plaintiff on this appeal. The bifurcated trial was conducted upon the assumption that defendants may have had defenses against some other parties, and the judgment here on appeal is premised upon the findings that plaintiff was a holder in due course, entitled to prevail on its own right irrespective of any defenses existing against its predecessors in interest.

---

[10]The complete text of section 3201 is as follows:

"(1) Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course.

"(2) A transfer of a security interest in an instrument vests the foregoing rights in the transferee to the extent of the interest transferred.

"(3) Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified indorsement of the transferor. Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner."

[11]This provision for transferee status was placed in the old Negotiable Instruments Law to overcome the antiquated common law principle that an assignee of a chose in action took only an equitable interest and not a legal title. (See Britton on Bills and Notes (2d ed. 1961) § 74, p. 171; Bigelow on Bills, Notes and Checks (3d ed. 1928) § 273, p. 201.)

Plaintiff's theory appears to be that it acquired not merely the rights of ELC, but the status of ELC as a "holder" without indorsement or negotiation of the notes. This theory cannot be reconciled with either the language of the statute or cases interpreting and applying it. Section 3201, like Negotiable Instruments Law section 49, gives the transferee the right to compel the transferor to indorse, but also provides that negotiation takes place only when the indorsement is made.

*In re Home Furniture Co.* (N.D. Cal. 1925) 7 F.2d 399, involved notes executed by the bankrupt, payable to the order of Chamberlain and assigned for value but without indorsement to Chappell. The federal court, applying California law, held that Chappell was not a holder in due course and therefore her claim was subject to any defenses which the bankrupt might have had against Chamberlain. After referring to California Civil Code section 3130 and related sections, the court said: ". . . it is seen that the Negotiable Instruments Law clearly contemplates a distinction between a 'holder' who takes by negotiation, and a 'transferee' by assignment. That distinction is, so far as we are here concerned, that the assignee without indorsement of a negotiable instrument payable to order takes it subject to equities against the assignor arising before notice of the assignment. [Citations omitted.]" (7 F.2d at p. 400.)

In explaining its holding the *Home Furniture* court quoted from a New York case as follows: " '. . . Section 79 of the [New York] Negotiable Instruments Law provides that, where the holder of an instrument payable to his order transfers it for value without indorsing it, the transferee obtains such title as the transferer had; but for the purpose of determining whether the transferee is a holder in due course the negotiation takes effect as of the time when the indorsement is actually made. Such indorsement never having been made, plaintiff cannot be deemed to be a holder in due course, as defined by sections 2, 60, 61, 91 and 98 of the Negotiable Instruments Law.' (These latter sections are all part of the Uniform Negotiable Instruments Law, which is found in sections 3082-3268 of the Civil Code of California.) Manufacturers' Commercial Co. v. Blitz, 131 App. Div. 17, 115 N. Y. S. 402." (7 F.2d at p. 400.)

Other cases explaining and applying the distinction between a holder and a transferee from a holder include *Northside Bldg. & Invest. Co.* v. *Finance Co. of Amer.* (1969) 119 Ga.App. 131 [166 S.E.2d 608, 611]; *United Overseas Bank* v. *Veneers, Inc.* (D.Md. 1974) 375 F.Supp. 596;

*Cheshire Commercial Corporation* v. *Messier* (1971) 6 Conn.Cir. 542, 278 A.2d 413, 415.

The only court decision which plaintiff cites for its interpretation of section 3201 is *Bowling Green Inc.* v. *State Street Bank and Trust Co.* (1st Cir. 1970) 425 F.2d 81. In that case Bowling Green negotiated a government check to Bowl-Mor, who deposited the check in State Street Bank. The bank immediately credited a portion of the check against an overdraft in Bowl-Mor's account, and shortly afterwards applied the balance in that account against debts which Bowl-Mor owed the bank. There was no evidence that Bowl-Mor had indorsed the check. The ground of the Court of Appeals decision, as stated in its opinion, is as follows: " . . . We therefore hold that a bank which takes an item for collection from a customer who was himself a holder need not establish that it took the item by negotiation in order to satisfy § 4-209 [of the Uniform Com. Code, corresponding to California Uniform Com. Code, § 4209]." (Id., at p. 84.)

In the course of its discussion the court said: ". . . The issue, however, is not whether the Bank bears the burden of proof, but whether it must establish that it took the item in question by endorsement in order to meet its burden. We think not. The evidence in this case indicates that the Bank's transferor, Bowl-Mor, was a holder. Under Mass.Gen.Laws Ann. c. 106, § 3-201(a), transfer of an instrument vests in the transferee all the rights of the transferor. As the Official Comment to § 3-201 indicates, one who is not a holder must first establish the transaction by which he acquired the instrument before enforcing it, but the Bank has met this burden here." (Id., at p. 83-84.)

To the extent that *Bowling Green* interprets and applies division 4 generally and section 4209 in particular, it is distinguishable from the case at bench. *Bowling Green* involved an item taken by the bank for collection and deposited to the customer's account. Our case does not.

If the *Bowling Green* court intended to say that a transfer by a holder without indorsement gives the transferee the status of a holder, that statement is irreconcilable with the language of section 3201 and with the case law cited above, interpreting section 3201 and its antecedent in the Negotiable Instruments Law. This conflict is analyzed at length in *United Overseas Bank* v. *Veneers, Inc., supra,* 375 F.Supp. 596, 603, where the district court declined to follow *Bowling Green.* Academic commentators have also pointed out that the quoted language in *Bowling Green* is in

conflict with the law elsewhere: see Hawkland, Depositary Banks as Holders in Due Course, 76 Com. L. J. 124; Comment (1971) 71 Colum. L. Rev. 302, 310; Note (1970) 12 B. C. Ind. & Com. L. Rev. 282.

In the light of the clear statutory language and its long history of interpretation by courts and commentators alike, we cannot regard the *Bowling Green* language as affecting the meaning of section 3201 of the California Uniform Commercial Code.

It follows from the foregoing analysis that plaintiff is a holder of nine of the thirteen notes but is not a holder of four. As to the latter group, the judgment must be reversed for a trial of the defenses which the defendants have asserted.

II *Plaintiff as a holder in good faith and without notice of defenses.*

The statutory standard under which the factual issues were tried is section 3302, subdivision (1),[12] subject to the definitions in section 1201.[13]

It is undisputed that plaintiff took the notes as security for money loaded, which is "for value." (See § 3303.)

■ The factual dispute which occupied the trial court was whether plaintiff had taken the notes in good faith and without notice of the defendants' alleged defenses.

---

[12] For the text, see footnote 1, *ante.*

[13] Section 1201, subdivision (19): " 'Good faith' means honesty in fact in the conduct or transaction concerned."

Section 1201, subdivision (25): "A person has 'notice' of a fact when (a) He has actual knowledge of it; or (b) He has received a notice or notification of it; or (c) From all the facts and circumstances known to him at the time in question he has reason to know that it exists. . . ."

Section 1201, subdivision (27): "Notice, knowledge or a notice or notification received by an organization is effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction, and in any event from the time when it would have been brought to his attention if the organization had exercised due diligence. An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines. Due diligence does not require an individual acting for the organization to communicate information unless such communication is part of his regular duties or unless he has reason to know of the transaction and that the transaction would be materially affected by the information."

The notes were regular on their faces and carried no notice of any infirmity; hence the extent of the bank's notice had to be determined from other evidence. The findings of fact made by the trial court on this issue are unusually detailed, and thus provide the parties and this court an especially clear delineation of the factual basis of the ultimate decision. Defendants' briefs in this court consist largely of an attack upon the language of the findings and the sufficiency of the evidence to support them. The greater part of defendants' argument reflects a failure to recognize that the trial court drew inferences and found facts, as it was entitled to do from the evidence, contrary to the view entertained by defendants. (See *Bancroft-Whitney Co.* v. *McHugh* (1913) 166 Cal. 140, 142 [134 P. 1157].)

The record does not support defendants' contention that the trial court "applied improper legal principles." The findings speak directly to the standards of the Commercial Code.

There is no basis for the contention that the trial court failed to understand which side had the burden of proof. The record shows that at one point the trial judge made a statement which defendants' attorney interpreted as indicating a belief that defendants had the burden of going forward with evidence that plaintiff was not a holder in due course. In subsequent argument defendants' attorney read to the court from section 3307, subdivision (3), which provides: "After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing" that he is such a holder in due course. The record gives no reason to doubt that the trial court weighed the evidence in the light of that statute.

The officers and employees of plaintiff who handled the transaction with ELC testified that they had no knowledge or information concerning any defenses, and they described in detail the investigation which they made and the information which they gathered to satisfy themselves that the notes were valid and that the parties with whom they dealt were reliable. The trial court's findings describe in some detail the investigations and inquiries made by plaintiff; and the trial court found that those investigations were reasonable under the circumstances, and that plaintiff lacked knowledge or reason to know or believe that the alleged defenses existed.

Defendants contend that the trial court improperly denied their request for special findings. The record shows that defendants submitted

to the trial court a 40-page document entitled "objections to proposed findings of fact and conclusions of law; proposed counterfindings of fact and corrected conclusions of law; and request for special findings." That document, in gross, is a reargument of the evidence as seen from the viewpoint of the defendants. The "proposed counterfindings" and the requested "special findings" are stated in evidentiary detail, interwoven with inferences which are contrary to the inferences drawn by the trial court. The findings signed by the trial court do fairly disclose the court's determination of the material issues of fact, as is required by Code of Civil Procedure section 632. It was not necessary for the court to couch its findings in any greater detail.

Defendant's argument emphasizes the fact, set out in the trial court's findings, that all payments on the notes had been made by checks of PELCO or its affiliate Gas Transmission Organization (GTO). When plaintiff inquired about this, it was informed that PELCO or GTO held funds of the makers, and that the makers desired those funds to be used in paying the installments on the notes. Plaintiff had been informed that each of the defendants had an interest in oil produced by PELCO. None of those who are defendants here expressed any objection to the bank's becoming the holder of his note.[14] Plaintiff sent each of the defendants a letter advising that it had "accepted, as holder in due course" the specifically described note, and inquiring whether the maker desired to make payments directly to the bank or payments through GTO. Most of the defendants responded that they desired payment to be made by PELCO or GTO. The findings of the trial court referred to these arrangements as one of the "elements of abnormalcy" which, in the light of the whole evidence, constituted neither lack of good faith or notice to plaintiff that there were defenses to the notes.

The trial court's evaluation of the evidence as a whole was within its powers as the fact finder.

Defendants have attached to their brief copies of some letters which are a part of the evidence, which defendants ask this court to interpret independently of the trial court, under the principle delineated in *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]. These exhibits, read by themselves, are not notice of any defenses on the notes, nor can we construe them as such notice. Rather, the letters written by plaintiff are evidence of some

[14]One note offered by ELC was not taken by plaintiff after the maker expressed objection to the transfer.

matters known by plaintiff, and the letters written by others are evidence of matters brought to plaintiff's attention, to be considered with a mass of other evidence, from which the trial court was required to make findings. This is not a case like *Ibanez* v. *Farmers Underwriters Assn.* (1975) 14 Cal.3d 390 [121 Cal.Rptr. 256, 534 P.2d 1336], where the issue of notice turned upon the interpretation of a single letter passing between the parties. Here the bank's knowledge was based upon information obtained both orally and by examination of correspondence and other papers; and any finding as to what the plaintiff learned through oral statements turned in part upon the credibility of witnesses. This mass of evidence was not received for the purpose of interpreting any particular document, but for its bearing upon the ultimate questions whether the bank acted in good faith and whether the bank had notice of defenses. Our independent interpretation of the correspondence does not establish anything which requires us to overturn the trial court's findings on the factual issues.

Defendants cannot prevail here by invoking the rule "that a financial institution may be denied the status of a holder in due course because of its close connection" with the payee. (See *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 822 [94 Cal.Rptr. 796, 484 P.2d 964], and cases cited.) In this case the facts found by the trial court establish that plaintiff had no connection with the transactions for which the notes were given to the payee. The trial court expressly found that neither ELC nor Burns, its president, acted as agent for plaintiff or its officers. Under the facts established by the trial court's findings, plaintiff's connection with ELC was simply that of a bank taking third-party notes as security for money loaned.

The judgment is reversed insofar as it pertains to the Kroeger note dated October 2, 1969, the Holle note dated November 4, 1969, and the two Kinne notes dated October 1, 1969. In other respects the judgment is affirmed. Appellants Kroeger, Holle and Kinne may recover their fair share of costs on appeal, as determined by the trial court after remand. Plaintiff may recover costs on appeal against the remaining appellants.

Thompson, J.,* and Jefferson, (Edwin L.), J.,† concurred.

A petition for a rehearing was denied June 8, 1976, and appellants' petition for a hearing by the Supreme Court was denied July 15, 1976.

---

*Assigned by the Chairman of the Judicial Council.

†Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.