In re George Nathaniel **WELCH,** **III, Debtor.**

**COMMERCE UNION BANK, Plaintiff,**

v.

George Nathaniel **WELCH, III and John C. McLemore, Trustee, Defendants.**

**Bankruptcy No. 381–03894.**
**Adv. No. 382–0060.**

United States Bankruptcy Court, M.D. Tennessee.

Oct. 28, 1982.

John C. McLemore, Nashville, Tenn., Trustee.

Robert P. Ziegler, Nashville, Tenn., for debtor.

Marc T. McNamee, Nashville, Tenn., for Commerce Union Bank.

Robert M. Garfinkle, Nashville, Tenn., for trustee.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on the plaintiff Commerce Union Bank's complaint

seeking relief from the automatic stay imposed pursuant to 11 U.S.C. § 362 so that Commerce Union may exercise its right of setoff against the debtor George N. Welch's demand deposit account in the amount of $8,114.37. In response, the trustee in this case has filed a counterclaim against Commerce Union essentially alleging that Commerce Union converted property of the debtor by depositing a $63,000.00 third party check made payable to the debtor in the debtor's personal checking account and subsequently setting off $55,000.00 from this account in satisfaction of a loan owed by the debtor to Commerce Union.[1] After consideration of the proof presented at the hearing on June 30, 1982, stipulations, exhibits, briefs of the parties and the entire record, this court concludes that the bank did convert the $63,000.00 check made payable to the debtor and therefore this amount should be turned over by Commerce Union to the trustee. The court further finds that Commerce Union should be granted relief from the stay to setoff the remaining monies in the debtor's deposit account in satisfaction of the defaulted loan owed by the debtor to Commerce Union.

The following shall constitute findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

On August 24, 1978, the debtor George N. Welch consolidated several loans with Commerce Union Bank totaling approximately $70,000.00. This consolidation loan was renewed on January 15, 1981, in the principal amount of $77,157.05. On May 8, 1981, the debtor met with John Dillon, an Executive Vice-President and loan officer for Commerce Union, to discuss the repayment of the debtor's outstanding loan. Dillon and the debtor agreed that the debtor would pay a portion of the proceeds he was to receive through a profit sharing plan at his place of employment, Thoroughbred Motor Cars, Inc., in partial satisfaction of the loan

owed to Commerce Union. To accomplish this purpose, the debtor signed the following letter which was delivered to Marilyn Messick, Assistant Vice-President of Commerce Union:

"This is to inform you that I am no longer employed by Scott-Welch Motor Cars LTD, Inc., which now operates as Thoroughbred Motor Cars, Inc. While I was an employee of Scott-Welch Motor Cars LTD, I was covered under a profit sharing plan. I would like to instruct you to please send any disbursement that I might have coming to me under this plan to Commerce Union Bank, Attention: John H. Dillon. I appreciate your help and cooperation."

Dillon and the debtor did not, however, establish what proportion of this disbursement would be applied to the debtor's outstanding loan. This matter was apparently reserved for future consideration.

The debtor did not terminate his employment with Thoroughbred Motor until September of 1981. On September 3, 1981, Fred Bryan, the administrator for the profit sharing plan, notified the trust department of Commerce Union that the debtor had ended his employment with Thoroughbred Motor and was entitled to benefits under the profit sharing plan in the amount of $63,118.37. The trust department issued a check in this amount to the debtor and, pursuant to the instructions of the debtor in the letter dated May 8, 1981, Marilyn Messick delivered the check in a sealed envelope to John Dillon.

On September 10, 1981, the debtor and John Dillon met to again discuss the application of the check to the payment of the debtor's loan. At this time, the loan was in default. After a lengthy discussion, the parties failed to reach an agreement as to what portion of the check should be applied to satisfy the debtor's loan. The debtor then left Dillon's office. The debtor never

---

1. The trustee's counterclaim also alleged that the setoff by Commerce Union was voidable as a preferential transfer. In an order dated June 17, 1982, this court granted judgment for Commerce Union on this issue since the setoff oc-

curred 91 days prior to the filing of the debtor's bankruptcy petition and therefore did not constitute a voidable preference pursuant to 11 U.S.C. § 547.

requested Dillon to surrender the check to him nor did the debtor ever endorse the check. Dillon thereafter had the check deposited into the debtor's checking account and immediately setoff $55,000.00 in this account in partial payment of the debtor's loan to Commerce Union.

The debtor subsequently filed a voluntary Chapter 7 petition in this court on December 10, 1981. As of this date, $8,114.37 remained in his checking account at Commerce Union and he owed Commerce Union approximately $30,697.00 on his defaulted loan. In his Statement of Schedules and Affairs, the debtor claimed a $7,900.00 exemption in the funds in his checking account at Commerce Union. On January 28, 1982, Commerce Union timely filed an objection to the debtor's election to exempt these funds.[2] Commerce Union then filed this adversary proceeding seeking relief from the automatic stay to setoff the remaining funds in the debtor's checking account. The trustee responded by submitting a counterclaim alleging that Commerce Union converted the debtor's check and therefore the funds represented by this check could be recovered by the trustee as property of the estate.

Commerce Union's failure to obtain the debtor's endorsement of the check in question before depositing it into the debtor's checking account is fatal to Commerce Union's contention that its actions did not constitute a conversion of the debtor's money. A bank may only supply a missing endorsement of its customer to a check when that check is taken *for collection*. Section 47–4–205 of the Tennessee Code provides in pertinent part:

> "*Supplying missing endorsement—No notice from prior endorsement.*—(1) A depository bank which has taken an item *for collection* may supply any endorsement of the customer which is necessary to title. . . ." (emphasis added).

An item is not submitted for collection unless both the customer and the bank have the requisite intent to create such a relationship. As the Court of Chancery Appeals for Tennessee observed in *Winslow v. Harriman Iron Co.*, 42 S.W. 698, 699–700 (Tenn.Ch.App.1897):

> "The making of a deposit creates the relation of debtor and creditor as between the bank and the depositor. It is a contract whereby the bank undertakes to receive the money, and pay it out on the depositor's check, and it also involves an implication that, if the depositor should become indebted to the bank, the bank would have the right to apply the deposit to the indebtedness. . . *No one can create this relation between the depositor and the bank without authority from the depositor. In such case the person who holds the depositor's money, and so deposits it without authority, is guilty of a conversion of the fund, and the bank receiving it is likewise guilty of conversion,* at all events, if it is so related to the payee making the deposit as to affect it with notice, as in the present case. The legal relation then existing between the bank and the person whose money is put into the bank without authority is not that of a technical depositor, but merely the relation that exists between persons when one gets possession of the property of the other without authority of law, or wrongfully asserts dominion over it, falling distinctly within the definition of a conversion. . . The bank, having knowledge in the manner stated, would be equally guilty of the conversion as the agent." (emphasis added).

See also *In re Granite City Cooperative Creamery Ass'n*, 8 U.C.C.Rep.Serv. (Callaghan) 393, 394–395 (D.Vt.1970), *aff'd*, 9 U.C.C.Rep.Serv. (Callaghan) 102 (2d Cir.1971); *Gardner v. Supreme Camp of the American Woodmen*, 11 Tenn.App. 52, 59–60 (1929).

---

**2.** The order and notice issued for the debtor's meeting of creditors specifically stated that any objections to the debtor's claims of exempt property must be filed with the court no later than 15 days after the meeting of creditors. The meeting of creditors in this case was held on February 2, 1982. Commerce Union filed an objection to the debtor's exemption election on January 28, 1982, which date was clearly within the time limits set by the court's order and notice.

The testimony in this case is completely devoid of any proof that the debtor ever intended to place the check at issue with Commerce Union for the purposes of collection. Indeed, the evidence demonstrates that the debtor tendered the check to John Dillon of Commerce Union for the express purpose of using a portion of the check to satisfy his outstanding loan commitments with Commerce Union. At no time did the debtor instruct Dillon or any other officer with Commerce Union to collect this check or to place this check in his checking account.

Commerce Union's assumption of control over the debtor's unendorsed check was inconsistent with the debtor's rights as owner and therefore, as the court in *Winslow* specifically noted, constituted a conversion of the debtor's property. *Winslow v. Harriman Iron Co.,* 42 S.W. at 700. *See also Merchants' National Bank v. Trenholm & Son,* 59 Tenn. (12 Heisk.) 520, 524 (1873); *Scruggs v. Davis,* 37 Tenn. (5 Sneed) 261, 264–265 (1857); *Lewis Brown Co. v. Mallory,* 8 Tenn.App. 36, 42 (1928). Furthermore, by placing this check in the debtor's personal checking account without first obtaining the debtor's approval, Commerce Union created a right to setoff which otherwise would have been nonexistent. This action is inconsistent with the fiduciary relationship existing between a bank and its customer.

Nor does Commerce Union's contention that the check was placed in the debtor's account in good faith negate a finding of conversion. As the Tennessee Court of Appeals explained in *Mammoth Cave Production Credit Ass'n v. Oldham,* 569 S.W.2d 833, 836 (Tenn.App.1977):

> " 'A conversion, in the sense of the law of trover, is the appropriation of the thing to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right.' *Barger v. Webb,* 216 Tenn. 275, 391 S.W.2d 664, 665 (1965); see W. Prosser, Law of Torts 79–97 (4th ed. 1971). To be liable, the defendant need only have an intent to exercise dominion and control over the property that is in fact inconsistent with the plaintiff's rights, and do so; . *good faith is generally immaterial.* Prosser, *supra,* at 83." (emphasis added).

*See also Bostic v. Watson,* 2 Tenn.App. 209, 211 (1926); *Schwantz v. Hearn,* 2 Tenn.Civ. App. 666, 674–676 (1912).

Finally, the court rejects Commerce Union's assertion pursuant to § 47–3–201 of the Tennessee Code that the debtor's transfer of the check to John Dillon vested him with all the powers held by the transferor, including the ability to deposit the check in the debtor's checking account without obtaining the debtor's endorsement. Section 47–3–201 expressly provides that the transfer for value of an instrument not then payable to bearer does not occur until the transferee endorses the instrument. Unless such endorsement is obtained, negotiation does not occur and there is no presumption that the transferee is the owner of the instrument. Tenn.Code Ann. § 47–3–201 (1979) provides in relevant part:

> "*Transfer—Right to endorsement.—*(1) Transfer of an instrument vests in the transferee such rights as the transferor has therein . . .
>
> . . . . .
>
> (3) Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified endorsement of the transferor. *Negotiation takes effect only when the endorsement is made and until that time there is no presumption that the transferee is the owner.*" (emphasis added).

The court thus concludes that Commerce Union's actions constituted a conversion of the debtor's check. Commerce Union is nonetheless entitled pursuant to 11 U.S.C. § 542(b) to setoff the remaining monies in the debtor's deposit account. Commerce Union's timely objection to the debtor's exemption claim in these funds preserved Commerce Union's post-petition right of setoff. *See Commerce Union Bank v. Haffner,* No. 81–3520, slip op. at 2–4

(D.Tenn. October 20, 1981), *aff'g,* 12 B.R. 371 (Bkrtcy.M.D.Tenn.1981); *Third National Bank v. Carpenter,* 14 B.R. 405, 407 (Bkrtcy.M.D.Tenn.1981).

The court will accordingly enter an order requiring Commerce Union to turn over to the trustee the amount of $63,118.37. The court will further order that Commerce Union shall be granted relief from the stay to setoff the remaining funds in the debtor's account in satisfaction of pre-petition debt.

IT IS, THEREFORE, SO ORDERED.