**In re George Nathaniel WELCH, III, Debtor.**

**COMMERCE UNION BANK, Plaintiff,**

v.

**George Nathaniel WELCH, III, and John McLemore, Trustee, Defendants.**

**Bankruptcy No. 381–03894.**
**Adv. No. 382–0060.**

United States Bankruptcy Court, M.D. Tennessee.

Dec. 16, 1982.

John C. McLemore, Nashville, Tenn., Trustee.

Robert P. Ziegler, Nashville, Tenn., for debtor.

Marc T. McNamee, Nashville, Tenn., for Commerce Union Bank.

Robert M. Garfinkle, Nashville, Tenn., for trustee.

## ORDER

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on the plaintiff Commerce Union Bank's motion to amend findings of fact and conclusions of law pursuant to Bankruptcy Rule 752(b), motion to alter or amend judgment pursuant to Bankruptcy Rule 923 and Federal Rule of Civil Procedure 59(e) and motion for a new trial pursuant to Bankruptcy Rule 923 and Federal Rule of Civil Procedure 59(a). Commerce Union essentially contends that the court's previous judgment erroneously found that Commerce Union had converted a check made payable to the debtor in the amount of $63,118.37. Upon consideration of the court's prior judgment and memorandum, briefs of the parties and the entire record, the court concludes that the plaintiff's motions should be denied.

The facts surrounding this proceeding are set forth in the court's prior memorandum dated October 28, 1982. *Commerce Union Bank v. Welch*, 29 B.R. 819 (Bkrtcy.M.D. Tenn.1982). In brief, the debtor and John Dillon, an officer with Commerce Union Bank, had been engaged in ongoing discussions concerning the debtor's repayment of certain outstanding loan commitments to Commerce Union. As a result of these conversations, the debtor agreed to entrust to Dillon a check which the debtor was to receive through a profit sharing plan with the apparent understanding that an undetermined portion of the check would be used to satisfy the debtor's loan obligations. Dillon thereafter received a check in the amount of $63,118.37 which was made payable to the debtor. The debtor and Dillon then met again but could not agree as to how much of the check would be applied to the debtor's loan. Following this meeting Dillon, without obtaining either the debtor's approval or endorsement, deposited the unendorsed check in the debtor's demand account at Commerce Union and immediately setoff $55,000.00 in this account in partial payment of the debtor's loan to Commerce Union. The debtor subsequently filed a Chapter 7 bankruptcy petition in this court. The trustee initiated this adversary proceeding to recover the money in question on the basis that Commerce Union's actions constituted a conversion of the debtor's check. The court found the trustee's position to be correct and therefore ordered Commerce Union to turn over to the trustee the sum of $63,118.37.

Commerce Union relies on § 47–3–201 of the Tennessee Code in requesting that the court's prior decision be amended to find that Commerce Union was not guilty of conversion. Tenn.Code Ann. § 47–3–201 (1979) provides in pertinent part:

> "*Transfer—Right to endorsement*—(1) Transfer of an instrument vests in the transferee such rights as the transferor has therein...
>
> .  .  .  .  .
>
> (3) Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified endorsement of the transferor. Negotiation takes effect only when the endorsement is made and until that time there is no presumption that the transferee is the owner."

In its previous opinion, the court found Commerce Union's reliance on this statutory provision to be without merit. The court concluded that, since the check in question was not endorsed, no transfer under § 47–3–201 had occurred. The court specifically stated that "the transfer for value of an instrument not then payable to bearer does not occur until the transferee endorses the instrument." *Commerce Union Bank v. Welch*, 29 B.R. at 823.

Commerce Union now asserts that the court erred in equating the term "negotiation" as used in § 47–3–201(3) with the term "transfer." The Bank submits that, even though its failure to obtain the debtor's endorsement on the check prohibited a negotiation from occurring pursuant to § 47–3–201(3), the debtor still transferred

the instrument to the Bank and pursuant to § 47–3–201(3) such transfer vested in the transferee Bank all rights possessed by the transferor debtor. Commerce Union further contends that these rights would encompass the debtor's status as holder of the instrument and thus the Bank could endorse the check on behalf of the debtor.[1] Commerce Union cites several cases as support for this proposition, including the First Circuit Court of Appeals' decision in *Bowling Green, Inc. v. State Street Bank and Trust Co.,* 425 F.2d 81, 83–84 (1st Cir.1970).

■ This court nevertheless remains unpersuaded by Commerce Union's analysis. The First Circuit's opinion in *Bowling Green* has been subjected to sharp criticism as regards this particular issue. *See, e.g., United Overseas Bank v. Veneers, Inc.,* 375 F.Supp. 596, 603–605 (D.Md.1974); *Security Pacific National Bank v. Chess,* 58 Cal. App.3d 555, 129 Cal.Rptr. 852, 19 U.C.C.Rep. Serv. (Callaghan) 544, 549–552 (1976); 2 U.C.C.REP.SERV. (M.B.) § 3.10 . (1982). The better view is that, in any transfer for value of an instrument not then payable to bearer, the transferee *must* obtain the endorsement of the transferor in order to acquire the status of a holder.[2] This interpretation is consistent with the provisions and purposes of § 47–3–201. Comment 7 to § 47–3–201 specifically provides that no effective negotiation occurs until the transferor's endorsement is obtained and that "[U]ntil that time the purchaser does not become a holder." To accept the Bank's contrary argument would eviscerate the clear statement of comment 7 that negotiation and the concomitant holder status is acquired solely by the transferee obtaining the transferor's endorsement of the instru-

ment. Furthermore, if, as the Bank contends, a transferee could always supply a transferor's missing endorsement, then the language in § 47–3–201(3) granting the transferee the unqualified right to have the transferor's endorsement would be rendered meaningless. The drafters of the Uniform Commercial Code could not have intended to create such a disharmonious result. As the District Court aptly explained in *United Overseas Bank v. Veneers, Inc.,* 375 F.Supp. at 605:

> "Moreover, the *Bowling Green* court's assertion that one who takes from a holder by transfer *is* a holder due to § 3–201(1) seems clearly at variance with the meaning of the Code. Under § 3–201(1), a '[t]ransfer of an instrument vests in the transferee such rights as the transferor has therein. . . .' That section allows a transferee to assert the rights of his transferor against another party; to hold, however, as did the *Bowling Green* court, that § 3–201(1) enables the transferee of a holder to become a holder who is then able, other conditions being met, to be a holder in due course, would be to render the other sections previously discussed nugatory. There is nothing in the U.C.C. to indicate that § 3–201(1) is to apply differently to depository banks than to other transferees and thereby permit such an anomalous and inconsistent result."

*Accord Wear v. Farmers and Merchants Bank,* 605 P.2d 27, 28 U.C.C.Rep.Serv. 410, 413, (Alaska 1980); *National Bank of North America v. Flushing National Bank,* 72 App.Div.2d 538, 421 N.Y.S.2d 65, 27 U.C.C. Rep.Serv. 1029, 1030 (N.Y.App.Div.1979);

1. Tenn.Code Ann. § 47–3–301 defines the rights of a holder as follows:

    "*Rights of a holder.*—The holder of an instrument whether or not he is the owner may transfer or neogitate it and, except as otherwise provided in § 47–3–603 on payment or satisfaction, discharge it or enforce payment in his own name."

2. Section 47–4–205 creates an exception to this rule when a depository bank has taken an unendorsed item for collection. Under these circumstances, the Uniform Commercial Code ex-

pressly provides that the depository bank may supply the missing endorsement of the customer to the check. This court in its previous decision found that the debtor in this case had not delivered the check to Commerce Union's loan officer for the purpose of collection and therefore held that § 47–4–205 was inapplicable to this case. *Commerce Union Bank v. Welch,* 29 B.R. at 822–823, Commerce Union has not now questioned the validity of this finding.

*Security Pacific National Bank v. Chess,* 58 Cal.App.3d 555, 129 Cal.Rptr. 852, 19 U.C.C. Rep.Serv. at 549–552; *Northside Building & Investment Co. v. Finance Co. of America,* 119 Ga.App. 131, 166 S.E.2d 608, 6 U.C.C. Rep.Serv. 345, 348 (1969).

■ Even assuming Commerce Union is correct and a transferee can become a holder without first obtaining the transferor's endorsement, the court would still find that no transfer occurred in the present case. The proof is abundantly clear that the debtor never intended to part with rights represented by the check in question. The debtor merely entrusted the check to an officer of Commerce Union until an ultimate decision could be reached as to what portion of the check would be applied to the debtor's outstanding loan commitments. The Bank subsequently, without obtaining either the debtor's endorsement or approval, placed the check in the debtor's deposit account and immediately setoff $55,000.00 in partial satisfaction of the debtor's loan to Commerce Union. The bank officer's actions not only created an impermissible right of setoff but also represented a total disregard of the fiduciary relationship which exists between a bank and its customer. In its previous decision, this court held that the loan officer's conduct clearly constituted a conversion of the debtor's property under Tennessee law. *Commerce Union Bank v. Welch,* 29 B.R. 819, at 822–824 (Bkrtcy., M.D. Tenn.1982). The court has found no reason to alter this result. Accordingly, Commerce Union's various motions seeking an amendment of the court's previous judgment and memorandum or a new trial are denied.

IT IS, THEREFORE, SO ORDERED.